# WHITFIELD *v.* ÆTNA LIFE INSURANCE COMPANY OF HARTFORD.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

### No. 258.   Argued April 12, 1907.—Decided April 22, 1907.

If an insurance company does business in a State it must do so subject to such valid regulations as the State adopts.

A State may adopt such public policy as it deems best, provided it does not in so doing come into conflict with the Federal Constitution; and if constitutional the legislative will must be respected, even though the courts be of opinion that the statute is unwise.

The statute of Missouri, that suicide, unless contemplated when the policy was applied for, shall be no defense to actions on policies of life insurance, is a legitimate exercise of the power of the State; and a stipulation in a policy that the company shall only be liable for a portion of the amount in case of suicide, not contemplated when the policy was applied for, is void, and cannot be set up as a defense.

Whatever tends to diminish a plaintiff's cause of action or to defeat recovery in whole or in part amounts in law to a defense.

144 Fed. Rep. 356, reversed.

THIS is a suit upon an accident policy of insurance issued November 3, 1900, by the Ætna Life Insurance Company of Hartford, Connecticut, upon the life of James Whitfield, a resident of Missouri. The policy specifies various kinds of injuries; also, the amount that will be paid by the company on account of such injuries respectively. It provides: "If death results solely from such injuries within ninety days, the said Company will pay the principal sum of five thousand dollars to Amanda M. S. Whitfield, his wife, if living; and in event of the death of the said beneficiary before the death of the insured, to the executors, administrators, or assigns of the insured." The policy recites that it was issued and accepted by the assured, James Whitfield, subject to certain conditions, among which are these: " . . . 5. In event of death, loss of limb or sight, or disability due to injuries inten-

tionally inflicted upon the insured by any other person (except assaults committed for the sole purpose of burglary or robbery), whether such other person be sane or insane, or under the influence of intoxicants or not; or due to injuries received while fighting or in a riot; or due to injuries *intentionally inflicted upon the insured by himself; or due to suicide, sane or insane;* or due to the taking of poison, voluntarily or involuntarily, or the inhaling of any gas or vapor; or due to injuries received while under the influence of intoxicants or narcotics, then in all such cases referred to in this paragraph, the limit of this Company's liability shall be *one-tenth* the amount otherwise payable under this policy, anything to the contrary in this policy notwithstanding. . . . 8. The maximum liability of the Company hereunder in any policy year shall not exceed the principal sum hereby insured, and in no event will claim for weekly indemnity be valid if claim is also made for any of the stated amounts herein provided for specified injuries based upon the same accident and resulting injuries."

The insured died April 7th, 1902; the plaintiff, his widow and the beneficiary of the policy, alleging in her petition that he died "from bodily injuries, effected through external, violent, and accidental means, and by a pistol shot." The petition also states that the company after receiving proofs as to the death of the insured offered to pay $500 as the full amount due by § 5 of the policy, but refused to pay more. The plaintiff asked a judgment for $5,000 with interest from the date of the death of the insured.

The company, in its answer, denied liability for the whole principal sum and averred, among other things, that by the terms of the policy "in the event death is caused by intentional injuries inflicted by the insured or any other person, whether such person be sane or insane, or while fighting or in a riot, or by suicide, sane or insane, or by poison or by inhaling gas or vapor, or while under the influence of intoxicants or narcotics then the amount to be paid shall be *one-tenth* of the principal sum or $500; . . . that said James Whitfield died from

bodily injuries caused by a pistol shot intentionally fired by himself for the purpose thereby of taking his own life; that the cause of the death of said Whitfield was suicide." It was not averred in the answer that the insured contemplated suicide when applying for a policy.

The plaintiff demurred to the answer. The demurrer was overruled, and the plaintiff filed a reply, admitting that the insured "died from bodily injuries caused by a pistol shot fired by himself and the cause of his death was suicide," but averring that the shot was fired and the suicide committed at a time when the insured was "incapable of realizing or knowing, and when he did not realize or know, what he was doing or the consequences of his act."

The case—a jury having been waived in writing—was tried by the court upon an agreed statement of facts, one of which was that the insured died "from bodily injuries caused by a pistol shot intentionally fired by himself, for the purpose of thereby taking his own life; that the cause of the death of said Whitfield was suicide."

The Circuit Court held that the plaintiff was not entitled to recover $5,000, but only $500, and judgment for the latter amount was entered. 125 Fed. Rep. 269. That judgment was affirmed by the Circuit Court of Appeals, 144 Fed. Rep. 356, and the case is here upon writ of certiorari.

*Mr. Frank Hagerman,* with whom *Mr. Herbert S. Hadley,* Attorney General of the State of Missouri, was on the brief, for petitioner:

There can, in case of suicide, be no limitation in the amount of the recovery.

The amount of the liability cannot, in the case of suicide, be lessened. *Kellar* v. *Travelers' Ins. Co.,* 58 Mo. App. 557, 561.

Prior to the decision in this case, it was the generally understood doctrine of the Supreme Court of the State and of the Federal courts that there could be no limitation in the amount of recovery in case of suicide, because, in *Logan* v. *Fidelity &*

*Casualty Co.*, 146 Missouri, 114; *Berry* v. *Knights Templars &c. Co.*, 46 Fed. Rep. 440; *S. C.*, upon appeal, 50 Fed. Rep. 511; and *Jarman* v. *Knights Templars Assn.*, 95 Fed. Rep. 70; *S. C.*, 104 Fed. Rep. 638, 187 U. S. 199, the policies provided (and the provision was held invalid) that in case of suicide the company should, in lieu of paying the full amount of the insurance, pay a sum equaling the premiums that had been paid to the company, which was no more of a limitation than was here attempted, where the explicit provision is that where death occurs by suicide only one-tenth of the insurance shall be paid.

Any other construction is an evasion of the statute which under familiar rules should be avoided; and if the company can contract to pay only a part of the insurance in case of suicide, the whole virtue of the statute can be destroyed.

In this way, by indirection and in a circuitous manner, the object and purpose of the statute might be defeated, which ought not to be permitted if settled rules of interpretation are to be followed. 26 Am. & Eng. Enc. of Law (2d ed.), 657; *Magdalen College Case*, 11 Coke, 66, 76; Endlich on Interpretation of Statutes, § 138; *Philpott* v. *St. George's Hospital*, 6 H. L. Cas. 338, 349.

When the *Jarman case* reached this court, 187 U. S. 197, 204, it was here said that the statute created "an independent and binding obligation overriding and nullifying any stipulation of the parties." See also in *Ætna Life Insurance Co.* v. *Florida*, 69 Fed. Rep. 932; *Berry* v. *Knights Templars &c. Co.*, 46 Fed. Rep. 439, 441; *S. C.*, 50 Fed. Rep. 511, 513.

The Circuit Court of Appeals erred in saying that the statute should receive a restrictive construction. Such a view is directly opposed to the cases hereinbefore cited, wherein the doctrine has been repeatedly affirmed that the statute, being remedial, was to have the most liberal construction, and if this court were not bound by the decisions already rendered in the state courts, it should at least lean toward agreeing therewith. *Burgess* v. *Seligman*, 107 U. S. 20.

The construction of this statute by the highest court of the

State is controlling here. *Knights Templars' Ass'n* v. *Jarman,* 187 U. S. 197, 204. It is contended that the Supreme Court of the State has not decided the question. But *Logan* v. *Fidelity Ins. Co.,* 146 Missouri, 114, 118, was from that court, and as already seen necessarily decided that a clause was invalid which in case of suicide limited the recovery to the premiums paid. There is no difference in principle between limiting the recovery to the amount of premiums paid and limiting it to a specific sum of money. *Berry* v. *Knights Templars Ass'n,* 46 Fed. Rep. 439, 441; *S. C.,* 50 Fed. Rep. 511; *Knight Templars Ass'n* v. *Jarman,* 104 Fed. Rep. 638; *S. C.,* 187 U. S. 199.

*Mr. James C. Jones,* with whom *Mr. J. J. Darlington* was on the brief, for respondent:

The statute does not abrogate the right to contract in respect to suicide when construed by the rules of construction applicable to such statutes.

At common law, suicide was a defense to an action on a policy of insurance. Sec. 7896 declares it shall be no defense. In the absence of any controlling statute public policy condemns a contract to insure against death by intentional self-killing and precludes a recovery on a life insurance policy where death is so caused even though the policy contains no exception covering suicide. *Ritter* v. *Mutual Life,* 169 U. S. 139. Hence, the statute is in derogation of common law and being so must be strictly construed. *Shaw* v. *Railroad Co.,* 101 U. S. 565; Sutherland on Construction of Statutes, § 400; Endlich on Interpretation of Statutes, § 113. The statute, as plaintiffs would have construed it, encourages self-murder and gives legislative sanction and approval to the very contract which this court has held so subversive of morality as to be within the condemnation of the law (in the absence of an enabling statute); and for the rule of construction which should be applied here, see *United States* v. *Fisher,* 2 Cranch, 390.

There is nothing in the statute which indicates that it is the

public policy of Missouri to limit or restrict the power to contract with respect to the amount of indemnity that shall be granted under an accident or life policy, where death ensues from suicide. It is the public policy of the State of Missouri, apparently, that the parties shall not contract so as to absolve the insurer absolutely from liability in the event of suicide, but it is nowhere stated in the law that policies against suicide shall not be written for a smaller amount in case of suicide. The insurer is at perfect liberty to contract for the payment of a fixed or a variable amount.

Nor would such a contract be an evasion of the statute.

The statute does not undertake to abolish suicide as a legitimate subject of contract. It merely prevents the enforcement of a contract provision for forfeiture in case of suicide. Unlike, under an ordinary life policy, the insured under this policy was not insured for a certain, definite and fixed sum, payable upon death, but was guaranteed the payment of a weekly indemnity in case of disability and a gross but variable sum in case of death from accident, the amount depending upon the character of the accident or the manner and circumstances under which it occurred.

MR. JUSTICE HARLAN, after making the foregoing statement, delivered the opinion of the court.

When the policy in suit was issued and also when the insured committed suicide it was provided by the statutes of Missouri that "in all suits upon policies of insurance on life hereafter issued by any company doing business in this State, to a citizen of this State, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void." Rev. Stat. Missouri, 1879, § 5982; *Ib.* 1889, § 5855; *Ib.* 1899, § 7896.

Assuming—as upon the record we must do—that within the true meaning of both the statute and the policy, the insured

committed suicide, without having contemplated self-destruction at the time he made application for insurance, the question arises whether the contract of insurance limiting the recovery to *one-tenth* of the principal sum specified was valid and enforcible.

1. That the statute is a legitimate exertion of power by the State cannot be successfully disputed. Indeed, the contrary is not asserted in this case, although it is suggested that the statute "seemingly encourages suicide and offers a bounty therefor, payable, not out of the public funds of the State, but out of the funds of insurance companies." There is some foundation for this suggestion in a former decision of this court, in which it was held that public policy, even in the absence of a prohibitory statute, forbade a recovery upon a life policy, silent as to suicide, where the insured, when in sound mind, willfully and deliberately took his own life. *Ritter* v. *Mutual Life Insurance Co.*, 169 U. S. 139, 154. But the determination of the present case depends upon other considerations than those involved in the *Ritter case.* An insurance company is not bound to make a contract which is attended by the results indicated by the statute in question. If it does business at all in the State, it must do so subject to such valid regulations as the State may choose to adopt. Even if the statute in question could be fairly regarded by the court as inconsistent with public policy or sound morality, it cannot for that reason alone be disregarded; for, it is the province of the State, by its legislature, to adopt such a policy as it deems best, provided it does not, in so doing, come into conflict with the constitution of the State or the Constitution of the United States. There is no such conflict here. The legislative will, within the limits stated, must be respected, if all that can be said is that, in the opinion of the court, the statute expressing that will is unwise from the standpoint of the public interests. See *Northwestern Life Ins. Co.* v. *Riggs*, 203 U. S. 243.

2. Did the courts below err in adjudging that the policy in suit was not forbidden by the statute? Can an insurance

company and the insured lawfully stipulate that in the event of suicide,. not contemplated by the insured when applying for a policy, the company shall not be bound to pay the principal sum insured but only a given part thereof? Will the statute in a case of suicide allow the company, when sued on its policy, to make a defense that will exempt it, simply *because of such suicide*, from liability for the principal sum?

We cannot agree with the learned courts below in their interpretation of the statute. The contract between the parties, evidenced by the policy, is, we think, an evasion of the statute and tends to defeat the objects for which it was enacted. In clear, emphatic words the statute declares that in *all* suits on policies of insurance on life it shall be *no* defense that the insured committed suicide, unless it be shown that he contemplated suicide when applying for the policy.. Whatever tends to diminish the plaintiff's cause of action or to defeat recovery in whole or in part amounts in law to a defense. When the company denied its liability for the whole of. the principal sum, it certainly made a defense as to all of that sum except one-tenth. If, notwithstanding the statute, an insurance company, may by contract, bind itself, in case of the suicide of the insured, to pay only one-tenth of the principal sum, may it not lawfully contract for exemption as to the whole sum or only a nominal part thereof, and if sued, defeat any action in which a recovery is sought for the entire amount insured? In this way the statute could be annulled or made useless for any practical purpose. Looking at the object of the statute, and giving effect to its words, according to their ordinary, natural meaning, the legislative intent was to cut up by the roots any defense, as to the whole and every part of the sum insured, which was grounded upon the fact of suicide. The manifest purpose of the statute was to make all inquiry as to suicide wholly immaterial, except where the insured contemplated suicide at the time he applied for his policy. Any contract inconsistent with the statute must be held void.

In *Berry* v. *Knights Templars' &c. Co.*, 46 Fed. Rep. 441, which was an action upon a policy of life insurance, it appears that the policy, among other things, provided that in the case of the self-destruction of the insured, whether voluntary or involuntary, sane *or insane*, the policy should be void. Judgment was given for the plaintiff. The Circuit Court said: "It is contended that the provision in the policy, declaring that it shall be void if the assured commits suicide, is a waiver or nullification of the statute which declares such a stipulation in a policy 'shall be void.' The statute is mandatory and obligatory alike on the insurance company and the assured. Its very object was to prohibit and annul such stipulations in policies, and it cannot be waived or abrogated by any form of contract or by any device whatever. The legislative will, when expressed in the peremptory terms of this statute, is paramount and absolute, and cannot be varied or waived by the private conventions of the parties." Upon writ of error to the Circuit Court of Appeals the judgment was affirmed, that court saying: "The company refused to pay the full amount named in the policy, claiming that by the express provisions of the policy self-destruction by the insured, whether sane or insane, rendered the contract for the payment of $5,000 void, and the company was only bound to pay the amount which had been paid in assessments by the insured. This action was brought in the Circuit Court for the Western District of Missouri, to recover the full sum of $5,000. The case was tried to the court, a jury being waived. The parties stipulated that the company was liable for the full amount claimed by the plaintiffs, unless excused by the clause in the policy providing that the same should be void in case of suicide; . . . Judgment in favor of the plaintiffs having been entered for the full amount of the policy, the case was brought to this court upon writ of error. . . . In our judgment, the court below ruled correctly in holding that the policy sued on was a contract made in Missouri, and, as such, that the provisions of § 5982 [the same as the statute now in question] are applicable

thereto; and therefore the judgment is affirmed, at costs of plaintiff in error." 50 Fed. Rep. 511, 512, 515.

In *Knights Templars' Indemnity Co. v. Jarmon,* 187 U. S. 197, this court had occasion to consider the scope and effect of the statute here in question. That was an action upon a policy of life insurance for $5,000. A recovery for the whole sum was sought, but the company defended the action upon the ground that the provision in the statute that it should be no defense that the insured committed suicide, related only to cases where he took his own life voluntarily, while sane, and in full possession of his mental faculties; that the provision in the policy that " 'in case of the self-destruction of the holder of this policy, whether voluntary or involuntary, sane or *insane,* . . . this policy shall become null and void,' applied and exonerated the company from all liability beyond that provided in the policy, 'that in the case of the suicide of the holder of this policy, then this company will pay to his widow and heirs or devisees such an amount of his policy as the member shall have paid to this company on the policy in assessments on the same without interest.' " This view of the statute was not accepted in the Circuit Court, and there was judgment against the company for the whole sum insured. That judgment was affirmed here upon certiorari to the Circuit Court of Appeals.

A leading case on the general subject is. *Logan v. Fidelity & Casualty Company,* 146 Missouri, 114, 119, 122, 123, which was a suit upon a policy which, according to the answer in the case, contained stipulations and covenants to the effect that in the event of fatal injuries to the assured wantonly inflicted upon himself, or inflicted upon himself while insane, the company's liability under its policy should be a sum equal to the premiums paid, and that sum the policy provided should be in full liquidation of all claims under it. The question before the court was whether or not the statute here in question applied to such a policy as the one there in suit. The trial court instructed the jury to return a verdict for the full amount of

the policy with interest.   The court said: " The error into which respondent has fallen is in assuming that § 5855 [the statute now in question] was intended to affect a particular line, class or department of insurance, as the same has been classified for legislation.   The real object of the section, as the clear terms of its language express, is to affect *all policies of insurance on life* from whatever class, department or line of insurance the policy may be issued or by whatever name or designation the company may be known.   It is policies of a given kind, and not companies of a class, that are to be affected by the provisions of §.5855.  The section was enacted clearly to protect all policy holders *of insurance on life* against the defense that the insured committed suicide, all provisions in the policies to the contrary notwithstanding, unless as provided in the section, it can be shown that the insured contemplated suicide at the time he made application for the policy.  .  .  .  When a policy covers loss of life from external, violent and accidental means alone, why is it not insurance on life?   Such a provision incorporated in a general life insurance policy admittedly would be insurance on life, then why less insurance on life because not coupled with provisions covering loss of life from usual or natural causes as well?   If one holds a general life policy and an accident policy, and is killed by lightning or commits suicide, so that he may be said to have died by accidental means, both the companies should pay, and the stipulation against liability in the event of suicide in the policies should be no more a defense against the suit upon the accident policy, providing against death from accidental cause, than against the policy which goes further and covers death from other causes as well.   No such exception or exemption is found in the plain and comprehensive language of § 5855. .  .  .  .   No rule of construction, short of one applied for distortion and destruction, can relieve accident insurance companies, issuing policies of insurance on life in this State, from the operation and influences of § 5855, which in plain and unambiguous terms declares that in all suits upon policies of

insurance on life thereafter issued, it shall be no defense that the assured committed suicide, unless it shall have been shown to the satisfaction of the court or judge trying the cause that the insured contemplated suicide at the time of making his application for the policies, all stipulations in the policy to the contrary being void."

In *Keller* v. *Travelers' Insurance Company*, decided by the St. Louis Court of Appeals, 58 Mo. App. 557, 560, 561, we have a decision very much in point. That was an action on an insurance policy for $2,500. The company defended upon the ground that by the terms of the policy if the insured died of suicide, whether the act be voluntary or involuntary, it should be liable for the then full net value of said policy per the American Experience Table of Mortality and four and one-half per cent interest and no more, and that the same should be paid in manner and form as provided in the policy for the payment thereof in the event of death. The defense was that the insured committed suicide and that the full net value of the policy, according to the contract, was only $814.50, and no more. The defense was overruled and judgment given for the principal sum. That judgment was affirmed in the Court of Appeals, the court saying: "The plain purpose of the statute *supra* was to prevent the insertion in policies of life insurance of exceptions to liability on the ground of the suicide of the insured, unless it could be proven 'that the insured contemplated suicide at the time he made the application for the policy.' This was in effect a legislative declaration of the public policy of this State. That it was intended to limit the power to contract for a lesser liability in cases of death by suicide, not within the limitation expressed in the statute, is also apparent from its terms, to wit: 'and any stipulation to the contrary shall be void.' . . . The fact that the premium warranted and the policy guaranteed full insurance in case of the death of the insured for any cause not specified in the clause set up in the defendant's answer demonstrates that said clause was designed to modify the liability of the

insurance company if the insured committed suicide. It necessarily follows, if this stipulation as to a decreased liability in the event of death by suicide is enforced, that it is *some* defense to the otherwise full liability agreed upon in the policy. As the statute in question declares that suicide, not committed as therein set forth, is '*no defense*,' we cannot hold that the present stipulation can be enforced without violating the plain terms of a mandatory statute which the parties have no power to alter or abrogate."

Without further discussion, we adjudge that, under the statute in question—anything to the contrary in the policy notwithstanding—where liability upon a life policy is denied simply because of the suicide of the insured, the beneficiary of the policy can recover the whole of the principal sum, unless it be shown that the insured, at the time of his application for the policy, contemplated suicide. The judgment must, therefore, be reversed and the case remanded for further proceedings in conformity with this opinion and consistent with law.

*It is so ordered.*