## CONTINENTAL CASUALTY CO. et al. v. AGEE.[*]

(Circuit Court of Appeals, Eighth Circuit. December 27, 1924.)

No. 6718.

**I. Insurance ⬗465—Accident insurance company, insuring against accidental death, is "life insurance company."**

An insurance company, which insures against accident, and against death when due to accidental causes, is a "life insurance company," within the meaning of Comp. Laws Utah 1917, § 1171, providing that the suicide of a policy holder of a life insurance company, after the policy has been in force for one year, shall not be a defense.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Life Insurance Company.]

**2. Insurance ⬗465—Construction of suicide provision of Utah statute held not affected by subsequent act.**

Laws Utah 1921, c. 29, § 1, amending Comp. Laws 1917, § 1144, and differentiating between life and accident insurance companies for the purpose of fixing the amount of their capital stock and some of the provisions of life policies, does not affect the application to accident companies of Comp. Laws Utah 1917, § 1171, providing relative to any "life insurance com-

*Rehearing denied March 6, 1925.

pany" that suicide after the first year shall not be a defense.

**3. Insurance ⬗465—Statute held to become condition of all life policies thereafter issued.**

Comp. Laws Utah 1917, § 1171, providing that the suicide of a policy holder of a life insurance company after one year, "whether said suicide was voluntary or involuntary and whether said policy holder was sane or insane," shall not be a defense, became a condition of all policies issued thereafter, though insuring only against accidental death, and cuts off the defense that death by intentional suicide while sane was not accidental.

**4. Insurance ⬗645(3)—Evidence held properly excluded as not applicable to issues.**

Evidence of death of insured by suicide, offered on theory that policies had not been in force one year, held properly excluded, as not applicable to any issue under admissions made in the pleadings.

In Error to the District Court of the United States for the District of Utah; Tillman D. Johnson, Judge.

Consolidated actions by Alfred W. Agee, administrator, against the Continental Casualty Company and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Petition for certiorari dismissed 45 S. Ct. 353.

Athol Rawlins, of Salt Lake City, Utah (William W. Ray, of Salt Lake City, Utah, on the brief), for plaintiffs in error.

James H. De Vine and James A. Howell, both of Ogden, Utah (Charles R. Hollingsworth, of Ogden, Utah, on the brief), for defendant in error.

Before LEWIS, Circuit Judge, and MUNGER and MILLER, District Judges.

MUNGER, District Judge. Robert G. Agee held five policies of insurance, issued by four different companies, insuring his life against death by accident. He died on July 19, 1922, and his administrator brought suit against each of the companies. The cases were consolidated for trial, and at the close of the evidence a verdict was directed in favor of the plaintiff, and from the judgments rendered on these verdicts this error proceeding has been prosecuted. The errors assigned relate to the rejection of evidence intended to prove that Robert G. Agee committed suicide while sane, and to the direction of a verdict.

[1] The main question presented is the effect of a statute of Utah excluding the defense of suicide in certain actions upon life insurance policies. By the evidence on behalf of the plaintiff it appeared that Robert G. Agee, a resident of Ogden, Utah, on July

19, 1922, went with four of his children to a bathing resort known as the Utah Hot Springs. He entered one of the bathing pools, and his children entered another. About an hour afterwards his children became alarmed, and a search was made, and he was found dead on the bottom of one of the bathing pools, in about four feet of water. Physicians testified that the immediate cause of his death was drowning. There was no dispute as to the facts about the insurance policies. The policies varied somewhat in language, but in effect each insured against loss of life resulting from bodily injuries, effected directly and independently of all other causes, through external and accidental means, excluding suicide, sane or insane, or any attempt thereat. The court sustained objections to a question and offers of proof seeking to show that the death of the insured was the result of suicide while he was sane, because of the provisions of section 1171 of the Compiled Laws of Utah (1917), which reads as follows:

"*Suicide No Defense after First Year.* From and after the passage of this chapter, the suicide of a policy holder after the first policy year of any life insurance company doing business in this state shall not be a defense against the payment of a life insurance policy, whether said suicide was voluntary or involuntary and whether said policy holder was sane or insane."

This statute has been in force in Utah since 1909. The plaintiffs in error contend that they are not "life insurance companies" within the meaning of this statute, but are accident insurance companies. Each of the policies in suit establishes the fact that the insurer, not only insures against certain classes of accidents, but also insures against death from certain causes. Probably all insurance companies insuring lives of persons limit their liability for death, by excepting some causes of death. An insurance company, which may be properly called an accident insurance company, because such insurance is the main or characteristic form of insurance afforded by it, may also be a life insurance company, because it insures against the death of the insured, even though the scope of such insurance is somewhat limited. Logan v. Fidelity & Casualty Co., 146 Mo. 114, 122, 47 S. W. 948; Zimmer v. Central Accident Ins. Co., 207 Pa. 472, 475, 56 A. 1003; Officer v. London Guarantee & Accident Co., 74 Colo. 217, 219, 220 P. 499; Knights Templars' & Masons' Life Indemnity Co. v. Berry, 50 F. 511, 513, 1 C. C. A. 561; Modern Brotherhood of America v. Lock, 22 Colo. App. 409, 411, 125 P. 556.

The statute applies to "any life insurance company doing business in the state," and no valid reason has been suggested to show that the Legislature intended to abolish the defense of suicide if attempted by a company making life insurance its principal business, but to leave such defense open when offered by a company effecting insurance on lives, provided such a form of insurance is not its principal business.

[2] The plaintiffs in error suggest that an act of the Legislature of Utah passed May 10, 1921, after these policies were issued, but before the payment of the last premiums thereon, and other sections of the Utah statutes relating to life insurance and life insurance companies, give a legislative definition of the term "life insurance" that should be applied to section 1171, which has been quoted. The act of 1921 (Laws Utah 1921, p. 96) made some amendments and additions to the portion of the laws of Utah relating to insurance. Section 1, amending section 1144 of the Compiled Laws of Utah, provided that all insurance business in the state was to be classified in eight kinds, and named as one kind "Life insurance, including within its meaning insurance upon the lives of persons and every insurance appertaining thereto," and another kind as "accident insurance, and either sickness or health insurance, including within its meaning insurance against injury, disablement or death resulting from traveling or general accidents * * * and every insurance appertaining thereto." It appears from this statute that the principal purpose of the act was to prescribe the amount of capital stock that should be possessed by an insurance company seeking to write the several kinds of insurance specified, and to prohibit the effecting of such insurance unless the company possessed the requisite capital. Other sections of the statutes fix some of the provisions that life insurance policies shall contain, provisions that are not ordinarily found in policies issued by accident insurance companies. Notwithstanding a differentiation between life insurance companies and accident insurance companies is indicated by these provisions of the statutes, for the purpose of fixing the amount of their capital stock or the form of an ordinary life insurance contract, we do not consider that they require that the words "life insurance company" in section 1171 should not be applied to accident insurance companies, when they also write insurance upon lives.

[3] In support of the assignment of error relating to the rejection of evidence, the plaintiffs in error contend that the insurance

policies granted protection to the assured only from death by accidental injuries, and that evidence should have been received to show his intentional suicide while sane, because such a suicide was not an accident. It may be conceded that, if it were not for the provisions of the Utah statute, this contention would be well supported (Tuttle v. Iowa State Traveling Men's Ass'n, 132 Iowa, 652, 654, 104 N. W. 1131, 7 L. R. A. [N. S.] 223, 16 A. L. R. 1404); but this statute is explicit that the suicide of the policy holder shall not be a defense whether said suicide was voluntary or involuntary and whether said policy holder was sane or insane. The statute, on familiar rules of construction, entered into and became a part of every life insurance contract effected after its enactment by companies doing business in Utah. Jarman v. Knights Templars' & Masons' Life Indemnity Co. (C. C.) 95 F. 70, 73; Bishop on Contracts, § 439.

Therefore, if, after the passage of this statute, an insurance company attempted to provide directly in a life insurance policy that it should not be liable for the death of the assured by suicide, or indirectly that it should only be liable for the accidental death of the insured, the statute struck down the limitation, and as an implied term of the contract rendered the insurance company liable, notwithstanding the suicide. A statute in almost the same words as the Utah statute is in force in Colorado, and the answer of the courts of that state to contentions that an insurance company is not liable for a death by suicide, when its contract expressly excludes liability for deaths by suicide, by sane or insane persons, has been given in several cases. In Head Camp Pacific Jurisdiction W. of W. v. Sloss, 49 Colo. 177, 184, 112 P. 49, 51 (31 L. R. A. [N. S.] 831), it was said:

"By this statute the state, through the proper authority, has declared it to be against public policy to permit insurance companies to contract against the payment of their policies, in the event of loss, because the insured came to his death by suicide. The contract in suit was made subsequent to the passage of this act, and upon full notice as to the policy of the state in that behalf. The propriety and wisdom of the enactment was for the Legislature alone, and is not properly for consideration or review here. The provision in this contract making suicide a defense against payment, being against the policy of the state, as declared in the statute, is, for that reason, a nullity. The very object of the statute is to prohibit such stipulations. It can neither

be waived nor abrogated by any plan or device whatever. The legislative will, when expressed in a peremptory statute, is paramount and controlling, and cannot be set aside by the private agreement of the parties."

In Modern Brotherhood of America v. Lock, 22 Colo. App. 409, 412, 125 P. 556, this decision was followed and applied to an action on a policy which contained a provision that it should be void, if the policy holder died by his own hand, whether sane or insane, and the policy holder had committed suicide. This decision was again followed in Officer v. London Guarantee Accident Co., 74 Colo. 217, 219, 220 P. 499, as applied to an action upon an accident insurance policy, where the policy holder had committed suicide while insane, and the policy contained a provision for payment of a sum equal only to the last premium paid, if the assured while insane inflicted fatal injuries upon himself. This restriction was declared void because of the statute.

A statute of Missouri (Rev. Stat. Mo. 1899, § 7896) provides as follows: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation * * * to the contrary shall be void."

In an action upon an accident insurance policy issued to a resident of Missouri, insuring the policy holder against death from accidental injuries, the defense was made that the assured died from a pistol shot intentionally fired by himself for the purpose of taking his own life, and that the policy provided that the liability of the insurer should be limited to one-tenth of the amount otherwise payable under the policy, if the assured's death was "due to injuries intentionally inflicted upon the insured by himself; or due to suicide, sane or insane." This defense was sustained in the lower courts (Whitfield v. Ætna Life Ins. Co. [C. C.] 125 F. 269; Whitfield v. Ætna Life Ins. Co., 144 F. 356, 75 C. C. A. 358), notwithstanding the terms of the Missouri statute above referred to, but this holding was declared to be erroneous by the Supreme Court of the United States in Whitfield v. Ætna Life Ins. Co., 205 U. S. 489, 496, 501, 27 S. Ct. 578, 580 (51 L. Ed. 895). The court said:

"We cannot agree with the learned courts below in their interpretation of the statute.

The contract between the parties, evidenced by the policy, is, we think, an evasion of the statute and tends to defeat the objects for which it was enacted. In clear, emphatic words the statute declares that in all suits on policies of insurance on life it shall be no defense that the insured committed suicide, unless it be shown that he contemplated suicide when applying for the policy. Whatever tends to diminish the plaintiff's cause of action or to defeat recovery in whole or in part amounts in law to a defense. When the company denied its liability for the whole of the principal sum, it certainly made a defense as to all of that sum except one-tenth. If, notwithstanding the statute, an insurance company, may by contract, bind itself, in case of the suicide of the insured, to pay only one-tenth of the principal sum, may it not lawfully contract for exemption as to the whole sum or only a nominal part thereof, and if sued, defeat any action in which a recovery is sought for the entire amount insured? In this way the statute could be annulled or made useless for any practical purpose. Looking at the object of the statute, and giving effect to its words, according to their ordinary, natural meaning, the legislative intent was to cut up by the roots any defense, as to the whole and every part of the sum insured, which was grounded upon the fact of suicide. The manifest purpose of the statute was to make all inquiry as to suicide wholly immaterial, except where the insured contemplated suicide at the time he applied for his policy. Any contract inconsistent with the statute must be held void. * * *

"Without further discussion, we adjudge that, under the statute in question—anything to the contrary in the policy notwithstanding—where liability upon a life policy is denied simply because of the suicide of the insured, the beneficiary of the policy can recover the whole of the principal sum, unless it be shown that the insured, at the time of his application for the policy, contemplated suicide."

The court quoted with approval from Berry v. Knights Templars' & Masons' Life Indemnity Co. (C. C.) 46 F. 439, 441, an action upon an insurance policy issued to a policy holder in Missouri, which contained a condition that in case of self destruction of the holder of the policy, whether voluntary or involuntary, sane or insane, it should become null and void, a portion of the opinion of the court dealing with a defense that the policy holder had committed suicide, as follows:

"It is contended that the provision in the policy, declaring that it shall be void if the assured commits suicide, is a waiver or nullification of the statute which declares such a stipulation in a policy 'shall be void.' The statute is mandatory and obligatory alike on the insurance company and the assured. Its very object was to prohibit and annul such stipulations in policies, and it cannot be waived or abrogated by any form of contract or by any device whatever. The legislative will, when expressed in the peremptory terms of this statute, is paramount and absolute, and cannot be varied or waived by the private conventions of the parties," —and from the decision affirming this case in the Court of Appeals 50 F. 511, 512, 515, 1 C. C. A. 561, and referred to its previous decision in Knights Templars' & Masons' Life Indemnity Co. v. Jarman, 187 U. S. 197, 201, 23 S. Ct. 108, 47 L. Ed. 139, an action to recover under a policy of life insurance, a Missouri contract, containing a provision that in case of the self destruction of the policy holder, whether voluntary or involuntary, sane or insane, the policy was to be null and void, and wherein it had rejected the contention of the insurer that the statute of Missouri applied only to suicide by the policy holder, while sane, and held that the statute applied to all cases of suicide, whether by a sane or an insane person.

The Missouri statute was again presented for consideration in Iowa State Traveling Men's Ass'n v. Ruge, 242 F. 762, 767, 768, 155 C. C. A. 350, wherein the Circuit Court of Appeals of this circuit held that the suicide of the policy holder was not a defense to an action upon an accident insurance policy, insuring against death from external, violent, and accidental means, although it also contained a clause exempting the insurer from liability, for injuries inflicted by the insured upon himself while sane or insane, whether resulting fatally or otherwise. At the time of these decisions upon the effect of the statute of Missouri, the courts of that state had given the statute an interpretation in a series of cases. In Logan v. Fidelity & Casualty Co., 146 Mo. 114, 125, 47 S. W. 948, 950, the Supreme Court of Missouri said:

"No rule of construction, short of one applied for distortion and destruction, can relieve accident insurance companies, issuing policies of insurance on life in this state, from the operation and influences of section 5855, which in plain and unambiguous terms declares that, in all suits upon policies of insurance on life thereafter issued, it shall be no defense that the assured committed

suicide, unless it shall have been shown to the satisfaction of the court or judge trying the cause that the insured contemplated suicide at the time of making his application for the policies, all stipulations in the policy to the contrary being void."

The facts in that case showed a suicide by the insured, but it was stipulated that he came to his death by accidental means. The general principle quoted from that decision seems to have been followed and applied in Keller v. Travelers' Insurance Co., 58 Mo. App. 557, 561; Applegate v. Travelers' Insurance Co., 153 Mo. App. 63, 90, 132 S. W. 2; Brunswick v. Standard Acc. Ins. Co., 195 Mo. App. 651, 187 S. W. 802, to cases of both intentional and unintentional suicide. Afterwards, in a later series of cases, the Supreme Court of Missouri declared the statute of Missouri did not bar a defense of suicide in actions on policies of insurance against death by accident which contained provisions limiting liability in case of death from self inflicted injuries, provided the assured was sane when he committed suicide. Scales v. National Life & Accident Ins. Co., (Mo. Sup.) 212 S. W. 8; Brunswick v. Standard Acc. Ins. Co., 278 Mo. 154, 166, 213 S. W. 45, 7 A. L. R. 1213; Andrus v. Business Men's Acc. Ass'n, 283 Mo. 442, 453, 223 S. W. 70, 13 A. L. R. 779; Aufrichtig v. Columbian Nat. Ins. Co., 298 Mo. 1, 12, 249 S. W. 912. Some of the reasons given for this construction of the statute were that the terms of the policies covered accidental injuries only, and intentional suicide is not an accident, while suicide by an insane person is an accident, and the statute left the parties free to contract in an accident policy touching the cause of death. In discussing this subject the court in the Brunswick Case declared that:

"In case of insurance effected upon life by the usual life insurance policy, the fact of death, since such fact is the sole condition precedent to recovery, is alone pertinent, and section 6945, supra, applies automatically to all cases of death by suicide, regardless of whether the assured was sane or insane at the time he killed himself, barring, of course, the exception noted in the statute itself. But where the assured solemnly contracts in an accident policy that liability for his death accrues only when the cause of death shall be an accidental injury, nothing seems clearer than that section 6945, supra, has no application, unless, as already stated, assured shall commit suicide while insane. In the latter event the death, being unintentional, is held to be accidental and, though suicide is expressly excepted by the policy, recovery can be had because of the saving provisions of said section 6945."

In establishing the rule stated in these later cases the court declined to follow the interpretation of the Missouri statute which had been placed thereon in Whitfield v. Ætna Life Ins. Co., 205 U. S. 489, 27 S. Ct. 578, 51 L. Ed. 895. The right of the state court to construe a local statute must be conceded, but if the Missouri statute and the Utah statute are the same in effect, it is the duty of this court in interpreting the Utah statute to follow any construction placed on the statutory language by the Supreme Court of the United States unless the Supreme Court of Utah has placed a construction thereon. No such decision by the Utah court appears to have been made. Each of these statutes abolishes the defense of suicide, in actions on policies insuring the life of the policy holder, under certain circumstances. A claim that the insurer may, notwithstanding the statute, contract that suicide shall be a valid defense, is declared by the Supreme Court of the United States in Whitfield v. Ætna Life Ins. Co., 205 U. S. 489, 496, 27 S. Ct. 578, 51 L. Ed. 895, an evasion and annulment of the statute and tends to defeat the object for which it was enacted. If an insurance company in an ordinary policy of life insurance may not contract that it shall not be liable in case of suicide, whether the insured was sane or insane, no valid reason is perceived why an accident insurance company should be allowed to make a similar contract. In either case the company seeks by contract to limit its liability, in the one by excepting death from a specified cause, and in the other by excepting suicide as an accident.

Nor is a valid reason perceived why an accident insurance company should be allowed the defense of suicide, if the policy holder was then sane, and denied the defense if he was insane at the time of the suicide. In either case the contract, if it governs, excepts that form of death. It must be conceded that effect cannot be given to the words of the policy and to the words of the statute, the one declaring lack of liability for death by suicide, and the other declaring that suicide shall be no defense. In such a situation the statute, declaring the public policy of the state, should be paramount. The statute of Utah provides that suicide, whether it was voluntary or involuntary and whether the policy holder was sane or insane shall not be a defense against the payment of a life insurance policy after the first policy year of a life insurance company and it cannot under a claim of judicial con-

struction, be limited as if it had provided only that suicide should not be a defense when the suicide is involuntary and by an insane policy holder. If any doubt of the correctness of this conclusion were entertained, the language of the Utah statute is so similar to that of the Missouri statute (although more explicit than the latter) that the construction given to such statutory language by the Supreme Court of the United States as heretofore quoted, to wit, "Looking at the object of the statute, and giving effect to the words, according to their ordinary, natural meaning, the legislative intent was to cut up by the roots any defense as to the whole and every part of the sum insured, which was grounded upon the defense of suicide," is controlling as to the construction to be given in this case to the statute of Utah.

No question is made of the right of the state to enact statutes of this nature as evidencing the public policy of the state. See Whitfield v. Ætna Life Ins. Co., 205 U. S. 489, 495, 27 S. Ct. 578, 51 L. Ed. 895. For the reasons which have been stated, the court did not err in excluding the defendants' testimony and offers of proof relating to the alleged suicide of Robert G. Agee.

[4] The plaintiffs in error also contend that they should have been allowed to prove that Robert G. Agee came to his death by suicide, because the Utah statute excludes the defense of suicide of the policy holder only after the first policy year, and none of the policies of insurance had been in force for one year. There was no error in the ruling made by the court, because no such issue was presented by the pleadings. In each case the complaint alleged, in substance, that the insurance company had at a period more than a year before the death of Robert G. Agee issued a policy of insurance on his life for a period of 12 months. In one complaint it was alleged that the policy provided that for each year it should be continued in force, after the first year, if the annual premium thereon should be paid in advance, 10 per cent. should be added to the principal sum of the insurance; that the subsequent premium was paid in advance and in consideration of that payment the defendant agreed to and did continue the policy in force and that Robert G. Agee died during and before the expiration of this second year and while the policy was in force. The defendant admitted all these allegations, and specifically admitted the death of the insured while the policy was in full force and effect.

In another complaint it was alleged that the insurance company by one policy insured the life of the insured for a period of one year beginning May 29, 1913, and by another policy for the period of one year beginning November 1, 1919, and that before these several dates in each year thereafter the annual premiums on the policies were paid to the insurer, and in consideration of such premiums the insurer agreed to and did continue the policy in full force to a date subsequent to the death of the insured, and that the insured died while the policies were in full force and effect. The answer admitted these allegations and also alleged that Robert G. Agee died while the policies were in full force and effect.

Another complaint alleged the issuance of the policy insuring the life of Robert G. Agee for one year beginning November 20, 1920, and that the policy contained a provision that each consecutive annual renewal of the policy should increase the amount of insurance 5 per cent. and that thereafter, so long as the policy was maintained in force the insurance should be for the original sum plus the accumulations, that the annual premium was paid on the policy November 20, 1921, continuing the policy in force for a year thereafter, and that Robert G. Agee died while the policy was in full force and effect. These allegations were admitted by the answer which also alleged that the death of Robert G. Agee occurred while the policy was in full force and effect. The other complaint alleged the issuance of a policy insuring the life of Robert G. Agee for a period of one year from September 18, 1909, and that the policy provided that for each year it was continued in force after the first year, the sum thereby insured should be increased by 5 per cent.; that the annual premiums were paid in advance and that in consideration of these payments the defendant agreed to and did continue the policy in force from year to year until after the death of the insured and that the insured died while the policy was in full force and effect. These allegations were admitted by the answer which also alleged that Robert G. Agee died while the policy was in full force and effect. Because of these admissions in the pleadings it is not necessary to consider the evidence, showing that only the original policies were issued, that payments of annual premiums were made under these policies subsequently to the first year, for which they were issued, the effect of the various terms used in the policies and in the receipts, renewal vouchers and continuation

contracts executed when such subsequent premiums were paid. See Standard Accident & Life Ins. Co. v. Wood, 116 Md. 575, 594, 82 A. 702.

The judgment will be affirmed.