## BUSINESS MEN'S ASSUR. CO. OF AMERICA v. SCOTT. *

(Circuit Court of Appeals, Eighth Circuit. January 17, 1927.)

No. 7305.

1. **Insurance** ⊂⊃465—Under Colorado statute, suicide while insane is death by "accidental means" (C. L. Colo. § 2532).

Under C. L. Colo. § 2532, suicide while insane is death by "accidental means," covered by an accident insurance policy providing for death benefits.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accidental Means.]

2. **Courts** ⊂⊃366(1)—State court's construction of state statute controls federal courts.

Federal courts are bound by construction of state statutes by state courts.

3. **Insurance** ⊂⊃465—Colorado statute held to preclude insurer from denying liability under accident policy, if insured committed suicide while insane more than one year after date of policy (C. L. Colo. § 2532).

In action on accident insurance policy, providing death benefits, but excluding suicide, sane or insane, C. L. Colo. § 2532, *held* to preclude insurer from questioning its liability, if insured committed suicide while insane, more than one year after date of policy.

4. **Insurance** ⊂⊃365(1)—Reinstatement of policy on payment of overdue premium held not in effect new contract as affecting liability of insurer for death by suicide within year.

Payment of overdue premium on accident insurance policy and reinstatement of policy *held* a restoration of the old policy and not in effect a new contract as affecting liability of insurer for suicide of insured within one year after date of reinstatement.

*Rehearing denied April 1, 1927.

**5. Trial ⟪139(1), 141—Verdict should be directed where evidence is undisputed, or so conclusive that verdict against it would be set aside.**

Trial court should direct a verdict where the evidence is undisputed, or where, though conflicting, it is of so conclusive a character that the court, in the exercise of a sound judicial discretion, would set aside a verdict in opposition to it.

**6. Insurance ⟪668(12)—Evidence of insured's insanity at time of suicide held to warrant directed verdict in action on accident policy.**

In action on accident insurance policy, evidence that insured was insane at time of suicide *held* so conclusive as to warrant court in directing verdict.

In Error to the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Action by Dora A. Scott against the Business Men's Assurance Company of America. Judgment for plaintiff, and defendant brings error. Affirmed.

Solon T. Gilmore, of Kansas City, Mo. (S. Harrison White, of Denver, Colo., and John Gilmore, of Kansas City, Mo., on the brief), for plaintiff in error.

John A. Cross, of Denver, Colo. (Con K. O'Byrne, of Denver, Colo., on the brief), for defendant in error.

Before KENYON, Circuit Judge, and SCOTT and SANBORN, District Judges.

JOHN B. SANBORN, District Judge. George C. Scott, the husband of Dora A. Scott, was the insured under an accident policy dated October 30, 1920, by which the assurance company agreed to pay to his beneficiary $5,000 in case the insured lost his life as a result of injuries caused exclusively by accidental means (excluding suicide, sane or insane). Premiums were due August 1st in each year. On August 1, 1923, the insured failed to pay the premium then due, but did pay it on August 20, 1923. It was accepted and the policy reinstated. On July 27, 1924, Scott shot himself. Dora A. Scott the plaintiff in the court below and the beneficiary named in the policy, demanded payment from the assurance company, which was refused, and she thereupon brought this suit. Her claim was that Scott committed suicide while insane, and that that was an accident covered by the policy. The testimony showed that Scott was the proprietor of a drug store in Denver, Colo., was happily married and had several children; that for several days before he shot himself he had acted strangely, had become unkind and indifferent to his wife and children, had used violent and abusive language in their presence, had neglected them and his business, was rude and abusive to his friends and customers, and generally conducted himself in an unnatural and unusual way, entirely foreign to his former nature and manner of life. At the close of the plaintiff's case, the defendant demurred to the evidence and moved the court to direct a verdict in its favor. The court overruled the demurrer and denied the motion. No evidence was introduced by the defendant, and the court directed a verdict in favor of the plaintiff. The correctness of that disposition of the case by the court is challenged.

The policy in question was a Colorado contract. The laws of Colorado (Laws of 1913, p. 358, § 59; Comp. Laws of 1921, § 2532) provide: "From and after the passage of this act, the suicide of a policy holder after the first policy year, of any life insurance company doing business in this state, shall not be a defense against the payment of a life insurance policy, whether said suicide was voluntary or involuntary, and whether said policy holder was sane or insane."

In Woodmen of the World v. Sloss, 49 Colo. 177, 112 P. 49, 31 L. R. A. (N. S.) 831, it was contended that this statute did not apply to the contracts issued by a fraternal or mutual association not organized for profit. The court said that it was the intention of the Legislature "that all life insurance contracts should receive the same construction, and be subject to the same statutory regulation and limitation, unless expressly exempted," saying: " * * * It reaches all insurance policies of all companies, without reference to their character, whether mutual organizations on the assessment plan, or otherwise. * * * The statute is clear and specific, and is capable of but one rational construction, namely, that it was the intent and purpose of the Legislature to prevent all companies, of whatsoever kind or character, issuing life insurance contracts, from escaping payment thereon in the event of death, simply on the ground that the insured committed suicide."

The case of Officer v. London Guarantee & Accident Co., 74 Colo. 217, 220 P. 499, held that this provision of the statute is applicable to an accident policy providing for death benefits, and that the taking of one's life while insane is an accident.

The case of London Guarantee & Accident Co. v. Officer, 78 Colo. 441, 453, 242 P. 989, held that self-destruction is an accident when the insured is insane so as to be incapable of understanding the nature of the act which he commits, and the court approved the following instruction given by the trial court, defining insanity: " 'That unsoundness of mind

which would prevent the insured from understanding the physical nature and consequences of his act, or if foreseeing and meditating its physical consequences would prevent the insured from understanding its moral nature and aspect.' "

[1] The question of whether the beneficiary in such a policy as this would have been entitled to recover if the insured had committed suicide while sane was not considered in any of these cases, and the Supreme Court of Colorado has thus far held only that suicide while insane is death by accidental means and covered by an accident policy providing for death benefits.

This court, however, in the case of Continental Casualty Co. v. Agee, 3 F.(2d) 978, has stated that, under a similar statute of the state of Utah, there is no valid reason why an accident insurance company should be allowed the defense of suicide if the policy holder was sane, and denied the defense if he was insane at the time of the suicide; that effect cannot be given to the words of the policy and to the words of the statute, the one declaring lack of liability for death by suicide, and the other declaring that suicide shall be no defense, and that, in such a situation, the statute declaring the public policy of the state is paramount.

[2] We prefer to go no farther than the Supreme Court of Colorado has gone in construing the provisions of the statute. We think it was not the intention of the Legislature to make this statute applicable to accident policies providing for death benefits. There is a well-recognized distinction in the language of insurance between life policies and accident policies, and between companies writing life insurance and those writing accident insurance. There is no reason why suicide committed while sane should be covered by such a policy, because suicide while sane is in no sense an accident and has no place in accident insurance. There may be some justification for requiring an accident policy if general to cover suicide while insane, which is death by accident, but there are many limited policies of accident insurance providing death benefits in case death is caused by a particular kind of accident. To such policies, such a requirement has no proper application. We think that it was the intention of the Legislature of Colorado merely to declare that life policies, as distinguished from accident policies, after the first policy year should be incontestable because of suicide. We are, however, bound by the construction which the Supreme Court of Colorado has given to the provisions of the statute in question. Therefore this policy, while it excluded, by its ex-

press terms, suicide committed while sane or insane, in effect contained also the statutory provision that suicide while insane constituted no defense after the first policy year.

The case of Northwestern Life Insurance Co. v. Johnson, 254 U. S. 96, 41 S. Ct. 47, 65 L. Ed. 155, holds that a provision in a life policy declaring that the policy shall be void if, within a certain time, the insured, while sane or insane, shall commit suicide, and a provision making the policy incontestable after a certain time, are both to be interpreted as implying that suicide of the insured, sane or insane, after the time specified, shall not be a defense.

The case of Whitfield v. Ætna Life Ins. Co., 205 U. S. 489, 27 S. Ct. 578, 51 L. Ed. 895, holds that the statute of Missouri, providing that suicide, unless contemplated when the policy is applied for, shall be no defense to actions on policies of life insurance, is a legitimate exercise of the power of the state; that a stipulation in a policy that the company shall only be liable for a portion of the amount in case of suicide not contemplated when the policy was applied for, is void and cannot be set up as a defense; that whatever tends to diminish a plaintiff's cause of action or to defeat the recovery in whole or in part amounts in law to a defense; that the manifest purpose of the statute is to make all inquiry as to suicide wholly immaterial, except where the insured contemplated suicide at the time he applied for the policy, and that any contract inconsistent with the statute must be held void.

[3] It is therefore apparent that, under the policy here in question, the insurer is precluded from questioning its liability to pay if the insured committed suicide while insane one year after the date of the policy.

[4] The policy contained the provision that, where there had been a failure to pay any premium when due, its subsequent acceptance should reinstate the policy. The insured had failed to pay the premium on August 1, 1923, but did pay it on August 20, 1923, and it was accepted. His death occurred on July 27, 1924, or within one year from the reinstatement of the policy. The defendant contends that the reinstatement was not a restoration of the old policy in full force and effect, but was a new contract, and that, that contract not having been in force for a full year, the insurer was not precluded from setting up the defense of suicide. We cannot agree with this contention. The payment of the premium after the due date did not create a new contract of insurance, and had the effect simply of restoring the old contract. The only condition was that the company would not be

liable for any accident occurring between the due date of the premium and the time it was paid. The insurer was in no better position to defend than it would have been had the suicide occurred prior to the failure to pay the premium and after the lapse of the first policy year. 32 C. J. 1357; Mutual Life Ins. Co. of N. Y. v. Lovejoy, 203 Ala. 452, 83 So. 591; Mutual Life Ins. Co. of N. Y. v. Lovejoy, 201 Ala. 337, 78 So. 299, L. R. A. 1918D, 860; Mass. Ben. Life Ass'n v. Robinson, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 261; Monahan v. Fidelity Mut. L. Ins. Co., 242 Ill. 488, 90 N. E. 213, 134 Am. St. Rep. 337; Goodwin v. Provident Sav. Life Assur. Soc. Ass'n, 97 Iowa, 226, 66 N. W. 157, 32 L. R. A. 473, 59 Am. St. Rep. 411; Keller v. North American Ins. Co., 221 Ill. App. 81; Lovick v. Providence Life Ass'n, 110 N. C. 93, 14 S. E. 506.

[5] There are two classes of cases in which it becomes the duty of the trial court to direct a verdict: (1) That class in which the evidence is undisputed; and (2) that class in which the evidence is conflicting, but of so conclusive a character that the court, in the exercise of a sound judicial discretion, would set aside a verdict in opposition to it. Foye Lumber Co. v. Pennsylvania R. Co. (C. C. A.) 10 F.(2d) 437.

[6] The evidence in this case on the question of insanity was all one way. It tended to show a strange and irrational course of conduct on the part of the insured for several days before the suicide, culminating in that event. We think that the conclusion that the insured was insane at the time he shot himself is the only one which could have been reached, and that, if this question had been submitted to the jury and the jury had found for the defendant, it would have been the duty of the court to set aside the verdict.

It follows that the judgment must be affirmed. It is so ordered.