ÆTNA LIFE INS. CO. v. BRAUKMAN.*

NEW ENGLAND MUT. LIFE INS. CO.
v. SAME.*

Nos. 969, 972.

Circuit Court of Appeals, Tenth Circuit.
May 1, 1934.

*Rehearing denied June 25, 1934.

John P. Akolt and Josiah G. Holland, both of Denver, Colo. (Elmer L. Brock, E. R. Campbell, Milton Smith, Jr., W. W. Grant, Jr., Erl H. Ellis, Morrison Shaforth, and Henry W. Toll, all of Denver, Colo., on the brief), for appellants.

Clarence A. Brandenburg, of Denver, Colo. (Stanley C. Brandenburg, of Denver, Colo., on the brief), for appellee.

Before LEWIS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

KENNEDY, District Judge.

The above-entitled causes were presented together upon the appeal, for the reason that the identical point is present in each case, with one additional point in the Ætna case relating to interest.

The controversy involves life insurance policies carrying indemnity clauses providing for the double payment of the amount of the face of the policy in the event the insured died through accidental means. The insured here had the same type of policy in the two companies, who are appellants, and therefore the facts concerning the death are applicable in each case. The causes come before this court upon a stipulation and pleadings in the court below, in view of which the insurance companies elected to stand upon the pleadings, and the trial court rendered judgment in favor of the appellee in each case upon the double indemnity clauses. The policies carried provisions providing for the payment of the double indemnity, where death resulted through external· and accidental means, if

such accident was evidenced by visible contusion or wound on the exterior of the body, with the additional condition that death did not result from suicide while sane or insane. The companies paid the amount admittedly due upon the straight death clauses, but refused to pay claims based upon the double indemnity clauses. Suits were interposed against the companies setting forth, among other necessary allegations, that the death of the insured occurred through bodily injuries effected by gunshot wound through accidental means, evidenced by a visible contusion or a wound on the exterior of the body. The defendants, answering, admitted all of the material allegations, but set up as a defense that the death of the insured occurred by committing suicide while sane. Demurrers to the affirmative defenses were interposed by plaintiff, sustained by the trial court, and, the defendants electing to stand upon such answers, judgments were entered in favor of the plaintiff. The defendants appeal in accordance with the rights reserved by the stipulation and exceptions properly taken to the court rulings.

The litigation arises in consequence of a statute of the state of Colorado, of which state the insured was a resident at the time of his death, which occurred at Denver on June 1, 1932. This statute was enacted in 1903, and was later changed by an amendment inserting the clause pertaining to the first policy year, which is not material to the matter here under investigation. The statute reads as follows: "From and after the passage of this act, the suicide of a policy holder after the first policy year, of any life insurance company doing business in this state, shall not be a defense against the payment of a life insurance policy, whether said suicide was voluntary or involuntary, and whether said policy holder was sane or insane." Section 2532, Colo. Compiled Laws 1921.

In view of the long-standing rule that other courts are bound by a construction placed upon a state statute by the highest court of the state [Ætna Life Ins. Co. v. Wertheimer, 64 F. (2d) 438 (C. C. A. 10)], it would seem pertinent to first consider the decisions of the Colorado Supreme Court to ascertain what, if anything, has been said in the way of a construction of this statute which would facilitate the solution of the point presented. The Colorado cases having a bearing upon the issue are: Head Camp Woodmen of the World v. Sloss, 49 Colo. 177, 112 P. 49, 31 L. R. A. (N. S.) 831; Modern Brotherhood of America v. Lock, 22 Colo.

App. 409, 125 P. 556; Weber v. Woodmen of the World, 60 Colo. 529, 154 P. 728; Officer v. London Guarantee & Accident Co., 74 Colo. 217, 220 P. 499; London Guarantee & Accident Co. v. Officer, 78 Colo. 441, 242 P. 989, and Massachusetts Protective Ass'n v. Daugherty, 87 Colo. 469, 288 P. 888.

A fair synopsis of the first three of these decisions is that the above statute there under consideration is constitutional and that it applied to all life insurance companies contracting to pay death benefits. In the first Officer Case the clause relating to sanity or insanity was first considered. It was conceded that the insured committed suicide while insane, and the court held that a provision in the policy exempting liability of the company when suicide resulted as a result of insanity in contravention of the statutory provision was a nullity, but further stated, whether necessary to the conclusion or not, that the taking of one's life while insane is an accident. In the second Officer Case the court again considered a case of admitted suicide while insane, and held that an insurance contract covering an exemption on account of suicide was void. In the Massachusetts Protective Association Case, which was likewise a case of suicide while insane, the court reiterated its former ruling. This case, decided in 1930, appears to be the last pronouncement of the Colorado court upon the question. A significant portion of the opinion in the last cited case found on page 889 of 288 P., 87 Colo. 469, may bear quotation:

"In 1913, the Legislature passed an act, C. L. § 2532, that provides as follows: 'From and after the passage of this act, the suicide of a policy holder after the first policy year, of any life insurance company doing business in this state, shall not be a defense against the payment of a life insurance policy, whether said suicide was voluntary or involuntary, and whether said policy holder was sane or insane.'

"In this case the suicide occurred after the first policy year. We have held that such provision is not in conflict with the Constitution; that it applies to life insurance policies, whether issued by a life insurance company or by an accident insurance company; and that any provision in a policy attempting to relieve an insurer from liability in case of suicide is a nullity. Head Camp Woodmen of the World v. Sloss, 49 Colo. 177, 112 P. 49, 31 L. R. A. (N. S.) 831; Officer v. London Guarantee & Accident Co., 74 Colo. 217, 220 P. 499."

From the foregoing it appears that a

case involving suicide while sane has never been presented to, or decided by, the Supreme Court of Colorado. With the federal courts, in Business Men's Assur. Co. v. Scott, 17 F.(2d) 4 (C. C. A. 8), a case of suicide while insane arising in Colorado was considered, and the court there observed that the Supreme Court of Colorado had up to that time only considered cases of suicide while insane, and declined to go farther than that court had gone in construing the provisions of the statute, although the opinion contains language concerning suicide while sane which in some aspects points with favor to appellant's contention.

Counsel have discussed at length a somewhat similar Missouri statute and the court decisions in relation thereto. This statute (Mo. St. Ann. § 5740, p. 4385), reads as follows: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

The Supreme Court of Missouri in Logan v. Fidelity & Casualty Co., 146 Mo. 114, 47 S. W. 948, considered the Missouri statute and as to whether or not the limitation in the policy upon the amount of recovery in the event of death by suicide could be sustained, but it is not clear that the question of the sanity or the insanity of the insured was directly in issue. On page 950 of 47 S. W., 146 Mo. 114, the court uses the following language: "No rule of construction, short of one applied for distortion and destruction, can relieve accident insurance companies, issuing policies of insurance on life in this state, from the operation and influences of section 5855, which, in plain and unambiguous terms, declares that, in all suits upon policies of insurance on life thereafter issued, it shall be no defense that the assured committed suicide, unless it shall have been shown to the satisfaction of the court or judge trying the cause that the insured contemplated suicide at the time of making his application for the policy, all stipulations in the policy to the contrary being void."

Some years later a case arose in the federal District Court in Missouri involving the same statute with the same type of policy, which was submitted upon an agreed statement of facts, to the effect that the suicide was brought about by a pistol shot intentionally fired by the insured with the purpose of taking his life. The trial court adjudged that the recovery was limited to the terms of the policy, to wit, one-tenth of the principal sum under such circumstances. The judgment was affirmed by the Circuit Court of Appeals, and the case went to the Supreme Court of the United States on certiorari, where it was reversed. In Whitfield v. Ætna Life Ins. Co., 205 U. S. 489, at page 496, 27 S. Ct. 578, 580, 51 L. Ed. 895, the gist of the decision appears in the following language:

"We cannot agree with the learned courts below in their interpretation of the statute. The contract between the parties, evidenced by the policy, is, we think, an evasion of the statute, and tends to defeat the objects for which it was enacted. In clear, emphatic words the statute declares that in all suits on policies of insurance on life it shall be no defense that the insured committed suicide, unless it be shown that he contemplated suicide when applying for the policy. Whatever tends to diminish the plaintiff's cause of action or to defeat recovery in whole or in part amounts in law to a defense. When the company denied its liability for the whole of the principal sum, it certainly made a defense as to all of that sum except one tenth. If, notwithstanding the statute, an insurance company may, by contract, bind itself, in case of the suicide of the insured, to pay only one tenth of the principal sum, may it not lawfully contract for exemption as to the whole sum or only a nominal part thereof, and, if sued, defeat any action in which a recovery is sought for the entire amount insured? In this way the statute could be annulled or made useless for any practical purpose. Looking at the object of the statute, and giving effect to its words according to their ordinary, natural meaning, the legislative intent was to cut up by the roots any defense, as to the whole and every part of the sum insured, which was grounded upon the fact of suicide. The manifest purpose of the statute was to make all inquiry as to suicide wholly immaterial, except where the insured contemplated suicide at the time he applied for his policy. Any contract inconsistent with the statute must be held void."

Later, the Supreme Court of Missouri in Brunswick v. Standard Acc. Ins. Co., 278 Mo. 154, 213 S. W. 45, 7 A. L. R. 1213, in reversing a case involving the same issue, definitely announced a rule that suicide by an insured while sane was not an accident. The court in its decision makes an attempt to distinguish the issues in the Whitfield Case, but it would seem unnecessary for the purposes of this

discussion to enter further into this analysis. The same court later, in Andrus v. Business Men's Acc. Ass'n, 283 Mo. 442, 223 S. W. 70, 13 A. L. R. 779, also discussed the statute, with the result evidently that it would be permissible to interpose a defense of suicide while sane, upon the ground that such death was not the result of accident. In Aufrichtig v. Columbian Nat. Life Ins. Co., 298 Mo. 1, 249 S. W. 912, also by the same court, it was likewise held that a recovery for death by accident brought about by suicide while sane was not maintained, but that suicide while insane was an accident. In Von Crome v. Travelers' Ins. Co., 11 F.(2d) 350 (C. C. A. 8), a case arising in Missouri, in a decision voiced by Federal District Judge Faris (who is the same judge delivering the opinion in the Brunswick Case while sitting as a judge of the Supreme Court of Missouri), the rule laid down in the Brunswick Case was adhered to. So that for the present at least we may consider that the rule of construction of the Missouri statute is that a suit upon a policy for accidental death resulting from suicide of the insured while sane is not maintainable except within the limitations of the policy.

The other statute considered is that of the state of Utah, and, being identical with the Colorado statute, need not be repeated here. A case under this statute arose in the United States District Court of Utah, reported as Continental Casualty Co. v. Agee, 3 F.(2d) 978 (C. C. A. 8). There the Circuit Court, speaking through Judge Munger, laid down the rule that offers of proof of suicide of the insured were properly excluded. The informative portion of the decision is found on pages 979, 980 of 3 F.(2d), in the following language:

"In support of the assignment of error relating to the rejection of evidence, the plaintiffs in error contend that the insurance policies granted protection to the assured only from death by accidental injuries, and that evidence should have been received to show his intentional suicide while sane, because such a suicide was not an accident. It may be conceded that, if it were not for the provisions of the Utah statute, this contention would be well supported (Tuttle v. Iowa State Traveling Men's Ass'n, 132 Iowa, 652, 654, 104 N. W. 1131, 7 L. R. A. (N. S.) 223; 16 A. L. R. 1404); but this statute is explicit that the suicide of the policy holder shall not be a defense whether said suicide was voluntary or involuntary and whether said policy holder was sane or insane. The statute, on familiar rules of construction, entered into and became a part of every life

insurance contract effected after its enactment by companies doing business in Utah. Jarman v. Knights Templars' & Masons' Life Indemnity Co. (C. C.) 95 F. 70, 73; Bishop on Contracts, § 439.

"Therefore, if, after the passage of this statute, an insurance company attempted to provide directly in a life insurance policy that it should not be liable for the death of the assured by suicide, or indirectly that it should only be liable for the accidental death of the insured, the statute struck down the limitation, and as an implied term of the contract rendered the insurance company liable, notwithstanding the suicide."

The Supreme Court of the United States granted certiorari, but, while the case was there pending and undisposed of, the Supreme Court of Utah considered and construed the statute, and the order granting the writ was revoked. 269 U. S. 552, 46 S. Ct. 17, 70 L. Ed. 407. The case in which the subject was considered by the Utah court is Carter v. Standard Acc. Ins. Co., 65 Utah, 465, 238 P. 259, 41 A. L. R. 1495. That court seems to place the statute somewhat upon the basis as a guide and rule for pleadings and proofs. The opinion on page 264 of 238 P., 65 Utah, 465, reads: "After the plaintiff has made a prima facie case of accidental death, to then permit the defendant to prove the death was suicidal in order to rebut the proof of accidental death would be to 'fly in the very teeth of the statute,' and render it useless for the purpose for which it was evidently intended."

It would therefore appear to be a fair analysis of the holding of the Utah court in the Carter Case that the defense of suicide in any form is not maintainable. The point was again before the Circuit Court of Appeals of our own Circuit in Ætna Life Ins. Co. v. Wertheimer, 64 F.(2d) 438, a case from Utah, and there in an able opinion delivered by Judge McDermott the holding of the Utah Supreme Court in the Carter Case was considered and construed, and the decision was definitely announced that the Utah statutory provision excluding proof of suicide as a defense was applicable to a double indemnity policy payable for accidental death.

In arriving at a conclusion in the cases at bar, this court is confronted with the situation of the Supreme Court of Colorado, where the controversy arises, not having passed directly upon a case where the question of suicide while sane was involved; of the Missouri Supreme Court under a somewhat different statute but similar in nature, having

announced that, under a policy covering accidental death, a recovery, except within contractual limitations, cannot be had where it appears that the death of the insured was caused by suicide while sane, for the reason that such an event is not an accident; and of the Supreme Court of Utah construing a statute identical with the Colorado statute and supported by decisions of the Eighth and Tenth Circuits, that a defense of suicide is not maintainable in a suit to recover double indemnity for death by accident under the statute of that state. As before stated, we have the decisions of the Colorado Supreme Court holding that the statute here involved applies to policies of life insurance, with indemnities for death by accident included, and that such statute is in all respects constitutional.

■ We adhere to the rule of construction upon the Colorado statute which has been adopted for the identical Utah statute by the Supreme Court of that state in the Carter Case, by the Eighth Circuit in the Agee Case, and by our own circuit in the Wertheimer Case. This conclusion is strongly supported by the logic and reasoning of the Supreme Court in the Whitfield Case, despite the views of the Missouri Supreme Court in the construction of their own statutes. If, as it has been held, the Legislature has the constitutional power to limit defenses of this type, regardless of contractual specifications, we see no formidable reason why all defenses of suicide cannot be logically eliminated after the lapse of a designated time. It may be assumed that as a matter of public policy it was the intention of the Legislature to take out of the realm of uncertainty, which usually exists, the question as to whether suicide results from insanity or self-destruction by intent. With this object in view, we see no serious offense against the general principles controlling contractual relations. The statute becomes a constituent part of the contract, and, after the prescribed lapse of time, the defense of suicide is, in the language of the Supreme Court in the Whitfield Case, "cut up by the roots." The alternative for insurance companies is to cease writing policies in Colorado with a suicide exemption clause, or, if necessary, to amend premium schedules to cover the additional risks.

It remains to consider whether or not the records present the issue squarely in these cases. Under the stipulations and pleadings, the case of the plaintiff is presented as to the accidental death. The exclusive defenses of suicide while sane are set up, overruled through demurrers, an election of the defendants to stand thereon, followed by the judgments of the court in plaintiff's favor. No other issue was involved. This is identical in result with a trial upon the issues. The judgments of the trial court in both cases are affirmed.

■ In the Ætna Case a question of interest is involved. The court below computed interest from the death of the insured to the date of judgment at the rate of 8 per cent., that being the legal rate in Colorado, while the policy provided for interest at a different rate, which, if adopted, wou'd amount to a total of 4⅗ per cent. to run from the date of death to the date of settlement at the home office. The appellant contends that the latter rate should have been adopted. We are of the opinion that this provision of the policy refers to the rate where settlement is made and not where prolonged litigation ensues, and that it has no reference to a situation in which the company refuses to settle at the home office in the usual manner, but instead denies liability. This portion of the Ætna judgment is likewise affirmed.