## 13928

KIRIAKIDES v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

(177 S. E., 40)

*Messrs. Haynsworth & Haynsworth,* for appellant, 

*Mr. C. G. Wyche,* for respondent, 

October 26, 1934.

The opinion of the Court was delivered by MR. C. T. GRAYDON, ACTING ASSOCIATE JUSTICE.

Alexander Kiriakides, the plaintiff-respondent, brought action against the Equitable Life Assurance Society of the United States, a corporation, defendant-appellant, upon two policies of insurance insuring the life of the respondent with "disability" and additional "death benefits"; each policy being in the sum of $5,000.00, providing for double indemnity in case of death from accident and for the payment of the sum of $50.00 a month in case of total and permanent disability as to the provisions relating to disability, the policies are identical insofar as the matters are to be considered by this Court. The two cases were tried as one on circuit and will be considered together.

Each of the policies bore the register date of January 30, 1930, but the one was delivered to Kiriakides on March 7, 1930, and the other on May 15, 1930. The question as to when the policies actually went into effect is not involved in this case, as under any construction both policies were certainly in effect in May, 1930.

The cases were tried before Judge Ramage and a jury at Greenville at the October term, 1933, and resulted in a verdict for the plaintiff in each case for the sum of $300.00, being the installments alleged to have been due under the disability provisions from the 20th day of July, 1932, to the 20th day of December, 1932. The policy contains the following provision with reference to incontestability: "This policy, except as *to the provisions* relating to Disability and Double Indemnity, shall be (a) *incontestable* after it has been in force during the lifetime of the insured for a period of one year from its date of issue, provided premiums have been duly paid, and (b) *free from restrictions* on travel, residence, occupation or military or naval service." (Italics added.)

The face of the policy shows that the defendant agrees to pay the sum of $5,000.00 to the wife of the insured, Marica Kiriakides, and then the society further agrees to *increase* the amount so payable to $10,000.00 upon receipt of due proof of death from accident in accordance with the double indemnity provision on the third page of the policy. The policy continues on the face thereof in this language: "And further, if the Insured before age 60 becomes *totally* and presumably *permanently disabled* as defined in the Total and Permanent Disability *provision* on the third page hereof, the Society will, subject to the conditions of such *provision,* waive subsequent premiums and pay to the Insured a *disability income of fifty dollars a month."*

The amount of the premium charged is $71.85, which includes the amount allocated by the company to the double indemnity and total and permanent disability provision.

The Court is not concerned with the double indemnity feature of the policy but only with the provision as to total and permanent disability.

The pertinent parts of the provision governing the total and permanent disability which is referred to on the face of the policy is found on the third page of the policy and reads as follows:

"BENEFITS IN EVENT OF TOTAL AND PERMANENT DISABILITY

"Definition: For the purpose of this policy:

"(A) Disability is total when it prevents the Insured from engaging in any occupation or performing any work for compensation of financial value, and

"(B) Total Disability is *presumably permanent* only under the circumstances and from the date (herein called Effective Date) as follows: (1) When due proof is received by the Society that it will presumably exist continuously during the remainder of the insured's life—then from the date upon which such proof is received by the Society; or (2) When it has existed continuously for three months— then from the date of the expiration of such three months; or (3) When it involves the entire and irrecoverable loss of sight of both eyes, or the severance of both hands at or above the wrists, or of both feet at or above the ankles, or such severance of one entire hand and one entire foot—then from the date of such loss or severance.

"(C) Disability resulting directly or indirectly from military or naval service in time of war is not a risk assumed by the Society.

"Benefits: Upon receipt of due proof before the expiration of one year after default in the payment of premium, or if there be no such default not later than one year from the maturity of this policy, that the Insured, while this policy was in force, became totally and presumably permanently disabled as above defined due to bodily injury or disease:

"Disability Before 60: (1) Before the anniversary of the Register date of this policy upon which the Insured's age at nearest birthday is 60 years, the Society will

"(a) *Waive payment of all premiums* falling due upon this policy after the Effective Date of such Disability and during its continuance.

"(b) *Pay to the Insured a monthly Disability Income* as stated on the first page hereof from the Effective Date of such Disability; the first payment to be made upon receipt of such proof and subsequent payments to be made monthly thereafter during the continuance of such Disability * * *.

"(Note:—Any premiums so waived and any Disability Income so paid shall not be deducted from any amount payable in any settlement of this policy.)

"Recovery from Disability: The Society shall have the right at any time during the first two years after receipt of such proof, and thereafter once a year, to require proof of the continuance of such Total Disability. If the Insured fails to furnish satisfactory proof, or if it appears at any time that such Total Disability has been terminated, no further premiums will be waived and no further Disability Income payments will be made on account of such Disability."

In addition to the incontestable clause contained in the policy, attention has been called to the statute law of South Carolina with reference to incontestability of life insurance policies, Section 7986 of the Code of 1932. This statute declares that after receiving the premium on any policy for the space of two years, the insurance company shall be deemed to waive the right to dispute the truth of the application, and Section 7987 gives the right to the insurance company to institute proceedings to vacate policies within two years from the date of the issuance of said contracts. These sections are not pertinent to the inquiry here for the reason that the incontestable clause in the policy itself is for a shorter period than that provided in the law, and if it is determined

that this clause does not cover the disability clause, there would be no reason to consider the statute.

There are three questions raised by the exceptions:

(1) That under the terms of the policies the same did not become incontestable in January, 1931, or May, 1931, or in January, 1932, or May, 1932, under Sections 7986 and 7987 of the Code of 1932.

(2) That the Circuit Judge should have directed a verdict in favor of the defendant company on the ground that the policies in question were procured through the plaintiff's fraudulent misrepresentations as to his health, said misrepresentations being material to the risk, it being admitted that the defendant tendered back to the plaintiff the premiums which the defendant claimed covered the disability portion of the policy.

(3) That there was error in the order of the Circuit Judge setting the case for appeal requiring the defendant-appellant to print certain parts of the record.

These questions will be considered in the order above stated.

There is some diversity of opinion as to whether a policy contract is separable as to the life, disability, and double indemnity provisions among the Courts of last resort in the United States, but under our construction the wording of the contract itself controls the question here under consideration. In the case of *Ness v. Mutual Life Insurance Co. of N. Y.*, 70 F. (2d), 59, the almost identical question is thoroughly considered by Judge Parker, Senior Justice of the Circuit Court of Appeals for the Fourth Circuit, and a well-reasoned opinion, to our minds, settles the point. The incontestable clause in the *Ness case* is as follows: "Incontestability.—Except for non-payment of premiums and except for the restrictions and provisions applying to the Double Indemnity and Disability Benefits as provided in Sections 1 and 3 respectively, this Policy shall be incontest-

able after one year from its date of issue unless the Insured dies in such year, in which event it shall be incontestable after two years from its date of issue."

After quoting the incontestable clause, Judge Parker disposes of the matter in the following language:

"The company contends that the effect of the second exception of this clause is to make it inapplicable to the double indemnity and disability provisions of the policy. The contention of the insured, which we think is correct, is that the effect of this exception is merely to preserve the rights of the company under the restrictions and provisions specifically set forth in sections 1 and 3. * * *

"The purpose of the second exception in the incontestability clause was to make clear that, notwithstanding the provisions of that clause, the company reserved the right to rely upon the restrictions and provisions contained in Sections 1 and 3. Thus the right was reserved to contest, under Section 1, liability for double indemnity in case of suicide or death resulting from military or naval service or from engaging in felony. And the right was reserved to contest, under Section 3, claims for disability where due proofs had not been furnished, or where upon request of the company proofs of the continuance of the disability had been refused, or where the disability resulted from self-inflicted injury or from military or naval service beyond the continental limits of the United States and Canada. Under some recent decisions defenses under clauses such as those contained in Sections 1 and 3 are held not to be precluded by the incontestability clause. See *Scales v. Jefferson Standard Life Ins., Co.,* 155 Tenn., 412, 295 S. W., 58, 55 A. L. R., 537, and note, and *Wright v. Philadelphia Life Ins. Co.* (D. C.), 25 F. (2d), 514, and cases there cited. But in many jurisdictions it is held that the incontestability clause does preclude a defense based upon such provisions. See notes in 55 A. L. R., 549 and 67 A. L. R., 1364. It was evidently to guard against a construction of the policy holding that the

defenses reserved in Sections 1 and 3 were precluded by the incontestability clause, that the second exception in that clause was inserted.

"If it had been the intention of the company that the right to contest liability for double indemnity or disability benefits should not be affected by the incontestability clause, it would have been easy enough to use language making that intention clear, as by simply wording the second exception to the incontestability clause to read: 'Except as to liability for double indemnity or disability benefits.' If there were any ambiguity in the language used, it is well settled that it should be resolved in favor of the insured. *Mutual Life Ins. Co. v. Hurni Packing Co.*, 263 U. S., 167, 174, 44 S. Ct., 90, 68 L. Ed., 235, 31 A. L. R., 102; *Imperial Fire Ins. Co. v. Coos County*, 151 U. S., 452, 462, 14 S. Ct., 379, 38 L. Ed., 231; *Thompson v. Phenix Ins. Co.*, 136 U. S., 287, 297, 10 S. Ct., 1019, 34 L. Ed., 408. But there is no ambiguity. The incontestability clause was directed at defenses which might be asserted to the policy. The exception which we are considering was clearly intended to except certain defenses from the operation of that clause; and, equally clearly, the defenses so excepted were those enumerated in the sections to which specific reference was made, *i. e.*, Sections 1 and 3. These sections provide the restrictions and provisions under which the promise with respect to double indemnity and disability made in the face of the policy are to be enjoyed. And the second exception in the incontestability clause preserves defenses arising out of these restrictions and provisions against the general effect of the clause. It is to be noted that the exception is, not as to the double indemnity and disability benefits, but as to 'restrictions and provisions applying to the double indemnity and disability benefits.' "

It will be seen from a study of the disability clause that there are many provisions which have to be complied with before the insured claiming disability can be paid thereunder.

(1) The insured must show that he cannot engage in any work for compensation of financial value.

(2) The insured must show that the disability will continue for a certain period unless it involves the loss of sight or certain other injuries enumerated therein.

(3) The company will not pay, in any event, any disability resulting directly or indirectly from military or naval service in time of war.

(4) The due proof must be made within one year after default in payment of premium and must show that the insured became totally disabled as provided in the policy.

(5) If the insured has not reached the age of 60 years, the society will:

(a) Waive all premiums;

(b) Pay to the insured a monthly disability income.

The last provision in the disability clause gives the society right to demand proof of the continuation of disability, and if it appears that the disability has been terminated, no further premiums will be waived and the disability income payments will be stopped.

These all are provisions which the insured must comply with for the society to be bound to pay the disability income. It is right and proper that the insurance company should reserve the right to make its own provisions as to the disability and that such provisions must be complied with by the insured but this could not in any event, by judicial construction or otherwise, be held to make the disability clause contestable under the wording of the policy.

It will be seen from the above that the entire policy in this case, as in the *Ness case,* is incontestable except *as to the provisions* relating to disability and double indemnity.

If the insurance company had desired to except the disability clause from the incontestable clause, this could have been done in plain language, but when the expression is used as to the provisions relating to disability it is logical to say that the insurance company merely reserved to itself the

duty to pay disability when the provisions of the disability clause were complied with.

The same incontestable clause states that after one year the insured shall be free from any restrictions as to travel, residence, occupation, or military or naval service. It could not be successfully contended that if a person was disabled while in military or naval service in time of war that this clause in the incontestable part of the policy would enable him to recover disability benefits, for under the *provisions* of the disability it is expressly stated that no disability will be allowed resulting directly or indirectly from military or naval service in time of war.

The policy, therefore, was incontestable after it had been in force for a period of one year by its own terms, and no testimony should have been allowed as to the circumstances surrounding the taking of the application and the representations made by the plaintiff at that time.

There is no necessity for considering the second question, but under our decisions and the testimony adduced, it was the duty of the Circuit Judge to submit the case to the jury in any event. The insured was examined by a physician chosen by the insurance company, and this examination is some evidence that the disease which Kiriakides is alleged to have had did not exist or that the doctor knew of it and waived this condition. *Roberts v. National Benefit Life Ins. Co.,* 150 S. C., 326, 148 S. E., 179; *Johnson v. Metropolitan Life Ins. Co.,* 111 S. C., 398, 98 S. E., 140; *Gamble v. Metropolitan Life Insurance Co.,* 95 S. C., 196, 78 S. E., 875; *Baker v. Metropolitan Life Ins. Co.,* 106 S. C., 419, 91 S. E., 324; *Wingo v. N. Y. Life Insurance Co.,* 112 S. C., 139, 99 S. E., 436.

The group of exceptions with reference to the setting of the case for appeal complains that the Circuit Judge was in error in requiring the printing of the testimony in question and answer form. This question is controlled by Section 29, Vol. 1 of the Code of 1932, which

embodies the Act passed in 1923 found at page 107 of the Acts (33 St. at Large No. 62). The section reads as follows: "On all appeals to the Supreme Court from the County Court, Court of Common Pleas, and Court of General Sessions, when it is necessary to print the testimony, or any part thereof, the same shall be printed in question and answer form as taken by the official stenographer unless otherwise agreed to by parties or attorneys. Only the necessary and pertinent testimony to which one or more exceptions relate shall be printed, and in case more than the necessary testimony is printed, then the Court shall tax the cost of all testimony unnecessarily printed against the offending party."

The exceptions raised the question of a motion for a directed verdict, and in order to reach an intelligent solution of this question it was necessary that the testimony be included in the record for appeal and that the Court have the full picture of what transpired at the trial of the case. It is true that under the decision of the Court here rendered the printing of very little of the testimony was essential, but we can see no error in the order of the Trial Judge setting the case for appeal.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.