THOMPSON v. NEW YORK LIFE INS. CO.
No. 4552.

District Court, E. D. Oklahoma.
Jan. 14, 1935.

Wilson & Wilson, of Oklahoma City, Okl., for cross-complainant.

R. E. Bowling, of Pauls Valley, Okl., and W. L. Farmer, of Oklahoma City, Okl., for defendants on cross-complaint.

FRANKLIN E. KENNAMER, District Judge.

By its cross-complaint, the New York Life Insurance Company, seeking cancellation of an insurance policy, and, as incidental thereto, other relief both legal and equitable, predicates its cause upon an alleged state of facts, substantially as follows:

The Insurance Company issued to Joseph B. Thompson a policy, effective February 23, 1924. This policy provides that the New York Life Insurance Company "* * * agrees to pay to Mary M. Thompson, Mother of the Insured, Beneficiary, Ten Thousand Dollars upon receipt of due proof of the death of Joseph B. Thompson, the Insured; or Twenty Thousand Dollars upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause, and that such death occurred within ninety days after sustaining such injury, subject to all the terms and conditions contained in Section 2 hereof.

"And the Company agrees to pay to the Insured One Hundred Dollars each month during the lifetime of the Insured and also to waive the payment of premiums, if the Insured becomes wholly and presumably permanently disabled before age 60, subject to all the terms and conditions contained in Section 1 hereof."

The policy stipulates for an annual premium of $357.70, of which amount it is recited that $15.40 is for the double indemnity benefit, and $18.60 for the disability benefits. Section 1, entitled "Disability Benefits," in eight numbered subdivisions, reads:

"1. Total Disability.—Disability shall be deemed to be total whenever the Insured is wholly disabled by bodily injury or disease so that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit.

"2. Permanent Disability.—Disability shall be presumed to be permanent,—(a) Whenever the Insured will presumably be so totally disabled for life; or—(b) After the Insured has been so totally disabled for not less than three consecutive months immediately preceding receipt of proof thereof.

"3. Benefits.—Upon receipt at the Company's Home Office, before default in payment of premium, of due proof that the Insured is totally and presumably permanently disabled and that such disability occurred after the insurance under this Policy took effect and before its anniversary on which the Insured's age at nearest birthday is sixty years, the following benefits will be granted:

"(a) Income Payments.—The Company will pay to the Insured a monthly income of $10 per $1,000 of the face of the policy during his lifetime and continued disability beginning immediately on receipt of said proof. Any income payment due before the Company approves the proof of disability shall be payable upon such approval. If disability results from insanity, income payments under this section will be paid to the beneficiary in lieu of the Insured.

"(b) Waiver of premiums.—The Company will waive payment of any premium falling due after approval of said proof and during such disability. Any premium due prior to such approval is payable in accordance with the terms of the policy, but if due after receipt of proof will, if paid, be refunded upon approval of proof.

"4. In the event of default in payment of premium after the Insured has become totally disabled, the policy will be restored upon payment of arrears of premium with interest at 5%, provided due proof that the Insured is totally and presumably permanently disabled, as herein defined, is received by the Company not later than six months after said default and the benefits under this section shall then be the same as if said default had not occurred.

"5. It is further agreed that the total and irrecoverable loss of the sight of both eyes, or of the use of both hands or of both feet or of one hand and one foot shall be considered total and permanent disability.

"6. Recovery from Disability.—The Company may from time to time demand due proof of the continuance of total disability, but not oftener than once a year after it has continued for two full years. Upon failure to furnish such proof, or if at any time it shall appear to the Company that the Insured is able to engage in any occupation for remuneration or profit, no further income payments shall be made nor premiums waived.

"7. The sum payable in any settlement of the policy shall not be reduced by income payments made nor by premiums waived under the above provisions. Dividends, loan and surrender values shall be the same as if the waived premiums had been duly paid. If any benefit under this section is unpaid at the time of the Insured's death it shall be payable to the person entitled to the proceeds of the policy.

"8. These Disability Benefits will not apply if the disability of the Insured shall result from self inflicted injury or from military or naval service in time of war."

Section 2, entitled, "Double Indemnity," is as follows: "The provision for Double Indemnity Benefit on the first page hereof will not apply if the Insured's death resulted from self-destruction, whether sane or insane; from any violation of law by the Insured; from military or naval service in time of war; from engaging in riot or insurrection; from war or any act incident thereto; from engaging, as a passenger or otherwise, in submarine or aeronautic operations; or directly or indirectly from physical or mental infirmity, illness or disease of any kind. The Company shall have the right and opportunity to examine the body, and to make an autopsy unless prohibited by law."

The policy also contains the following clause as to incontestability: "This Policy shall be incontestable after two years from its date of issue except for non-payment of premium and except as to provisions and conditions relating to Disability and Double Indemnity Benefits."

Proof of total disability of the insured was made on June 25, 1925, and thereafter the insurer commenced the payment of monthly disability benefits as of January 1, 1925, and continued such payments until April 1, 1934, and during the same period waived the payment of the recurring annual premiums. Under date of April 30, 1934, the insurer addressed a joint letter to the insured and the beneficiary, notifying them that it had recently learned of certain misrepresentations made by the insured in his application for the policy, and because thereof it rescinded the provision for disability and double indemnity benefits contained in the policy and made a tender of the amount of all premiums paid for such benefits, with interest thereon from the date of receipt to the date of tender. The letter also notified the addressees that by reason of the rescission of the disability and double indemnity benefits, the annual premium

under the policy was reduced to $323.70, and that the insurer had recalled its waiver of payment of the ten annual premiums due February 23, 1925, to February 23, 1934, inclusive, and demanded payment of same, totaling $3,237, within 30 days, or in default of such payment the insurer would declare the policy lapsed for nonpayment of premium. A further demand was made for a return to the insurer of the sum of $11,015.20, the total of the monthly disability benefits theretofore paid. This letter was received by Mary M. Thompson, acting as guardian of Joseph B. Thompson, who had become an incompetent person, and she replied thereto refusing to accept the tender made and denying the right of the insurer to make the demands contained in the letter. The cross-complaint further alleged that the insured had made certain material representations in his application for the policy which had been relied upon by the insurer in its issuance of the policy, and which were wholly untrue and constituted a fraud, entitling the insurer to cancel the policy, and for other relief about in accordance with the demands of the letter above mentioned, and that the insurer had only a short time prior to April 30, 1934, learned of said fraud.

The motions to dismiss the cross-complaint were presented upon two grounds—want of equity and the existence of an adequate remedy at law.

The main argument urged in support of the first ground is that the incontestable clause of the policy bars the Insurance Company from the relief sought. It is contended that the effect of this clause is to prevent any defense of nonliability as to the disability or double indemnity benefits, but only secures the insurer in the right, after the expiration of the two year period, to preserve all its rights incident to double indemnity and disability benefits recited in sections 1 and 2 of the policy. In opposition, the contention of the company is that the presence of the exception relating to double indemnity and disability contained in the clause leaves the policy yet open to contest, because of fraud in its procurement.

Because the type of policy involved is somewhat new, the decisions in point on this question are recent and not numerous. There has developed, however, an irreconcilable conflict in the authorities. Favoring the construction suggested by movants is the case of Ness v. Mutual Life Insurance Co. of New York (C. C. A. 4th) 70 F. (2d) 59, wherein the clause considered was as follows: "Except

for non-payment of premiums and except for the restrictions and provisions applying to the Double Indemnity and Disability Benefits as provided in Sections 1 and 3 respectively, this Policy shall be incontestable after one year from its date of issue unless the Insured dies in such year, in which event it shall be incontestable after two years from its date of issue." Judge Parker delivered the opinion of the court, and makes the following comment:

"The purpose of the second exception in the incontestability clause was to make clear that, notwithstanding the provisions of that clause, the company reserved the right to rely upon the restrictions and provisions contained in sections 1 and 3. Thus the right was reserved to contest, under section 1, liability for double indemnity in case of suicide or death resulting from military or naval service or from engaging in felony. And the right was reserved to contest, under section 3, claims for disability where due proofs had not been furnished, or where upon request of the company proofs of the continuance of the disability had been refused, or where the disability resulted from self-inflicted injury or from military or naval service beyond the continental limits of the United States and Canada. Under some recent decisions defenses under clauses such as those contained in sections 1 and 3 are held not to be precluded by the incontestability clause. See Scales v. Jefferson Standard Life Ins. Co., 155 Tenn. 412, 295 S. W. 58, 55 A. L. R. 537, and note, and Wright v. Philadelphia Life Ins. Co. (D. C.) 25 F.(2d) 514, and cases there cited. But in many jurisdictions it is held that the incontestability clause does preclude a defense based upon such provisions. See notes in 55 A. L. R. 549 and 67 A. L. R. 1364. It was evidently to guard against a construction of the policy holding that the defenses reserved in sections 1 and 3 were precluded by the incontestability clause, that the second exception in that clause was inserted.

"If it had been the intention of the company that the right to contest liability for double indemnity or disability benefits should not be affected by the incontestability clause, it would have been easy enough to use language making that intention clear, as by simply wording the second exception to the incontestability clause to read: 'Except as to liability for double indemnity or disability benefits.' If there were any ambiguity in the language used, it is well settled that it should be resolved in favor of the insured. Mutual Life Ins. Co. v. Hurni Packing Co., 263 U. S. 167, 174, 44 S. Ct. 90, 68 L. Ed. 235, 31 A. L. R. 102; Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452, 462, 14 S. Ct. 379, 38 L. Ed. 231; Thompson v. Phenix Ins. Co., 136 U. S. 287, 297, 10 S. Ct. 1019, 34 L. Ed. 408. But there is no ambiguity. The incontestability clause was directed at defenses which might be asserted to the policy. The exception which we are considering was clearly intended to except certain defenses from the operation of that clause; and, equally clearly, the defenses so excepted were those enumerated in the sections to which specific reference was made, i. e., sections 1 and 3. These sections provide the restrictions and provisions under which the promise with respect to double indemnity and disability made in the face of the policy are to be enjoyed. And the second exception in the incontestability clause preserves defenses arising out of these restrictions and provisions against the general effect of the clause. It is to be noted that the exception is, not as to the double indemnity and disability benefits, but as to 'restrictions and provisions applying to the double indemnity and disability benefits.'"

The reasoning of this case is followed by the Supreme Court of South Carolina in the very recent case of Kiriakides v. Equitable Life Assurance Society of United States, 177 S. E. 40, 41. In that case, the clause before the court was in this language: "This policy, except as to the provisions relating to Disability and Double Indemnity, shall be (a) incontestable after it has been in force during the lifetime of the Insured for a period of one year from its date of issue, provided premiums have been duly paid, and (b) free from restrictions on travel, residence, occupation or military or naval service."

Opposing these cases are Greber v. Equitable Life Assurance Society (Ariz.) 28 P. (2d) 817; New York Life Insurance Co. v. Davis (D. C. W. D. Pa.) 5 F. Supp. 316; Mutual Life of New York v. Strochmann et al. (D. C. M. D. Pa.) 6 F. Supp. 953; Mutual Life Insurance Co. v. McConnell et ux., 20 Pa. Dist. & Co. R. 250. The Greber, McConnell, and Davis Cases were all decided prior to the decision in the Ness Case. Judge Parker, in his opinion, makes comment on the first two, but does not mention the Davis Case; it probably not having been reported at the time. The Strochmann Case was decided a few weeks after the Ness Decision and construed a clause exactly the same as involved in the Ness Case, but it is clear that Judge Watson did not have the Ness opinion before him.

Because of these opposing decisions, I think it could be very well said that the clause is of doubtful meaning, and, therefore, under the rule requiring the construction of doubtful provisions of a policy in favor of the insured, it should be interpreted as movants have suggested. But I am constrained to believe that the reasons given by Judge Parker are applicable here and are sound and in accord with the true fundamentals of insurance now of so great importance in human affairs. For business reasons, and in many states by statutory command, the incontestable clause has found a firm place in life insurance contracts. It is beneficial to the insurer and the insured alike. The policy is more salable because of it, and it gives a security to the insured. No doubt, the premium is computed on a basis of the greater risk incident to its presence in a policy. The application for an insurance policy is usually written by or in the presence of the agent of the company. The medical examination is by a physician chosen by the company. Hence, a provision as to incontestability should unquestionably receive a liberal interpretation in favor of the insured, and this rule should not be varied where there is added health and accident insurance to the ordinary life policy.

The construction here adopted is also supported by another consideration of compelling influence. The exception from incontestability as to disability benefits, whatever it may be, is identical with such exception as to double indemnity. Its meaning, therefore, logically should be held to be the same in the case of either class of benefits. If the language, for instance, exempts liability for double indemnity from the two-year incontestable period, likewise it affords the same exemption for the liability because of disability benefits, as both classes of benefits are afforded identical exemption by the express terms of the clause. It is fair to say that the expert who prepared the policy so intended. The contract for double indemnity in the case of accidental death contained in a policy is deemed a policy of life insurance within the meaning of the statutes relating to life insurance. Whitfield v. Ætna Life Ins. Co., 205 U. S. 489, 27 S. Ct. 578, 51 L. Ed. 895; Continental Casualty Co. v. Agee (C. C. A. 8) 3 F.(2d) 978; New York Life Ins. Co. v. Rositzky (C. C. A. 8) 45 F.(2d) 758; Ætna Life Ins. Co. v. Wertheimer (C. C. A. 10) 64 F.(2d) 438; Ætna Life Ins. Co. v. Braukman (C. C. A. 10) 70 F.(2d) 647. And the statutes of Oklahoma relating to life insurance become a part of this policy to the same extent as though they had been expressly written into it. Great Southern Life Insurance Co. v. Jones (C. C. A. 8) 35 F.(2d) 122. Section 10524, O. S. 1931, provides:

"No policy of life insurance shall be issued or delivered in this State * * * unless the same shall at least provide in substance the following: * * *

"Third. That the policy * * * shall be incontestable after two years from its date, except for non-payment of premiums and except all violations of the condition of the policy relating to the naval or military service in time of war. * * * "

Section 10527, O. S. 1931, requires the approval of the form of every life insurance policy by the State Insurance Commissioner. Therefore, it is plain that the period within which the insurer could contest the liability for double indemnity was fixed at two years, whatever may have been the intention of the parties to the contract. It is to be assumed, however, in view of the above statutory provisions, that the incontestable clause was drafted with the purpose that it have a meaning to comply with the statute, and if, referring to double indemnity, it has such meaning, does it not follow that it was intended to have the same meaning as to disability benefits? I think it should be so considered.

In view of the construction given the incontestable clause, the cross-complaint should be and is dismissed for want of equity, and it is unnecessary to enter into the vexatious question as to whether the company would have an adequate remedy at law. In passing it may be well to remark that the cross-complaint shows on its face a situation which might bar the company on account of laches. For a period of nearly ten years it did not question the policy, but paid the disability benefits during all that time, according to its provisions. It would seem that it had ample time for investigation, and was not diligent in its discovery of the fraud. But on this point I make no decision.

The application of cross-complainant for an injunction against the prosecution of the action pending in the district court of Garvin county is denied. However, since the dismissal of the cross-complaint on the grounds above announced constitutes a decision on the merits of the case, it is to be expected that no other proceedings will be had in the case pending in the state court until it is determined whether an appeal is taken from

this decision. In the event of appeal herefrom by the cross-complainant, I think it may, if necessary, properly apply to the Circuit Court of Appeals for an order staying the state court action pending the appeal.