EMANUEL LANDAU, Plaintiff, *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, January 24, 1938.

*Murray B. Kestin,* for the plaintiff.

*Alexander & Green [James D. Ewing* of counsel], for the defendant.

GENUNG, J.   The issue here presented is whether the incontestability clause contained in a life and disability policy bars the defendant's rescission of disability benefits contained in a life insurance policy because of misrepresentations contained in the application which formed part of the insurance contract.

The case has been submitted upon an agreed statement of facts, to which is annexed the policy and the application upon which the policy was issued.

It is conceded that on October 1, 1936, some five years after the issuance of the policy, plaintiff became totally and presumably permanently disabled, within the meaning of the policy, and has remained so disabled to the date of the trial.

By the stipulation it is admitted that prior to the application plaintiff had been suffering from certain ailments, had received certain hospitalization and medical attendance, and had undergone certain operations, of which facts the defendant had no knowledge, and if it had known of these facts it would not have issued the policy.

The prior history so admitted is inconsistent with the representation contained in the application, and, unless the policy and its disability benefits be deemed incontestable, defendant's rescission must be sustained.

It, therefore, becomes necessary to consider the incontestability clause contained in the policy in the light of policy provisions imposed by the Insurance Law.

Section 101 of the Insurance Law makes compulsory the inclusion of certain provisions in life or endowment insurance policies. Subdivision (2) of that section, which deals with incontestability, requires: " A provision that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its date of issue, except for non-payment of premiums and except for violation of the conditions of the policy relating to military or naval service in time of war and *at the option* of the company provisions relative *to benefits in the event of* total and permanent disability and provisions which grant additional insurance specifically against death by accident may also be excepted."

It is not questioned that the defendant by appropriate provisions could have exempted from the time limitation disability benefits as well as life insurance. However, the plaintiff urges that the language employed in the incontestability clause does not effect such exemption.

As an exercise of the option which the statute affords, the defendant refers to the following policy provision:

" Incontestability and freedom of travel, residence and occupation. *This policy,* except as to the provisions relating to Disability and Double Indemnity shall be (A) incontestable after it has been in force during the lifetime of the Insured for a period of one year from its date of issue, provided premiums have been duly paid."

Neither counsel cites any New York cases wherein the controlling question was the construction of the language in an incontestability clause as applied to disability benefits.

In the State authorities to which references are made, apparently the language employed was deemed adequate to enable a contest of the disability benefits. In the main these cases involve consideration as to whether the life and disability provisions of an insurance contract constitute a divisible or indivisible contract. However, *Rhine* v. *New York Life Ins. Co.* (273 N. Y. 1) has decided that the life and disability provisions in the policy were so interwoven as to constitute a single integral insurance contract.

The Court of Appeals has indicated, however, its attitude toward ambiguous language in insurance policies.

In *Mansbacher* v. *Prudential Ins. Co.* (273 N. Y. 140, 143), in an opinion by CRANE, Ch. J., it is stated: " We have said more than once that insurance policies upon which the public rely for security in death, sickness or accident, should be plainly written in understandable English, free from fine distinctions which few can understand until pointed out by lawyers and judges."

In emphasizing the need for a definiteness and certainty in the incontestable clauses of a policy, CARDOZO, Ch. J., in *Killian* v. *Metropolitan Life Ins. Co.* (251 N. Y. 44 49), says: " The value of a clause declaring a policy incontestable lies in no slight degree in the definiteness of the protection accorded to the holder. The good that it promises is in part a state of mind. * * * Alike for insured and for beneficiaries there is to be the peace of mind that is born of definiteness and certainty."

Lacking guidance from New York authorities in the application of these general principles to the question involved, recourse must be had to the numerous Federal authorities wherein the question under consideration has been discussed.

To the general rule that ambiguity in a policy should be resolved in favor of the insured, these cases stress the further consideration that where the insurer is attempting to avail itself of an exemption from statutory compulsion it should do so by clear and unmistakable language.

Omitting phrases not material to the issue, subdivision 2 of section 101 requires: " A provision that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its date of issue except * * * at the option of the company *provisions relative to benefits in the event of total and permanent disability.*"

The language in the policy is neither an adherence to that of the statute nor an amplification thereof. The phrase employed

" except as to the provisions relating to disability and double indemnity " may connote something quite different from the language used in the statute.

On the first page of the policy, which contains the company's contractual obligation a liability is assumed for benefits in the event of total and permanent disability. The omission of the words used in the statute, to wit, " benefits in the event of," may well create a doubt as to whether the excepting clause is referable to this contractual obligation or only to those provisions elsewhere grouped under the heading " Total and Permanent Disability."

The right of rescission, as disclosed by the stipulated facts, is because of misstatements in the application. The distinction between an insurance contract and the policy itself is not to be overlooked. The contract consists of the policy and the application. The application, even though attached to the policy, is not a part of the policy.

Section 101, subdivision (3), makes compulsory as a provision in the policy a statement that the policy contains the entire contract, " but if the company desires to make the application a part of the contract it may do so provided a copy of such application shall be endorsed upon or securely attached to the policy when issued, and in such case the policy shall contain a provision that the policy and the application therefor shall constitute the *entire contract* between the parties."

In the policy under consideration it is made incontestable " except as to the provisions *relating* to disability and double indemnity."

While there are numerous provisions in the policy relating to disability and double indemnity, the defense and the right of rescission herein asserted are predicated on misrepresentation contained in the application signed at a date earlier than the policy, which, though attached to the policy, is not a part thereof, but, taken together with the policy, constitutes the entire contract between insured and insurer.

Aside from the criticism that the defense is not based on a provision in the policy but on misstatements in the application, as urged by plaintiff's counsel, it is to be observed that these application statements are not " relating " peculiarly to disability and double indemnity, but relate to life insurance as well. To the insured, who is entitled to have the language of the policy in plain English, this clause would in all likelihood be deemed referable to the provisions segregated under the appropriate caption.

In *Stroehmann* v. *Mutual Life Ins. Co.* (300 U. S. 435), decided on March 29, 1937, the United States Supreme Court, by unanimous decision, held an incontestable clause similar to that in the present

case to be inefficient to exempt disability claims from the time limit imposed. The clause there under consideration provided: " Incontestability. Except for nonpayment of premiums and except for the restrictions and provisions applying to the Double Indemnity and Disability Benefits as provided in Sections 1 and 3 respectively, this policy shall be incontestable after one year from its date of issue unless the insured dies in such year, in which event it shall be incontestable after two years from its date of issue."

McREYNOLDS, J., of the Supreme Court, said: " No reason appears to doubt the power of the insurer to except from the ordinary incontestability clause all policy provisions relating to Disability Benefits, Ch. 28, Laws N. Y. (1923); *Steinberg* v. *N. Y. Life Ins. Co.*, 263 N. Y. 45; 188 N. E. 52. But the petitioner maintains that the words used in the policy before us are inadequate definitely to disclose a purpose so to do. And we think the point is well taken."

It quoted its own expression in *Mutual Life Ins. Co.* v. *Hurni Packing Co.* (263 U. S. 167) as " The language employed is that of the company and it is inconsistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it."

A reasonable doubt here arises as to whether the clause employed included the contractual provisions on the first page of the policy, whether it included the representations in the application or whether it was limited to those provisions grouped under the heading of " Total and Permanent Disability " and " Double Indemnity for death from accident."

' The ordinary office of an exception or proviso is to take special cases out of a general class or to guard against misinterpretation. Experience shows, however, that they quite frequently are introduced from excessive caution." (*Employers' Liability Assur. Corp.* v. *Morrow*, 143 Fed. 750, 756.)

In *Thompson* v. *New York Life Ins. Co.* (9 F. Supp. 248, 251) the incontestable clause was qualified " as to provisions and conditions relating to disability and double indemnity benefits." The opinion in the case last cited commented on the conflicting decisions, some of which held that the incontestability clause precluded a defense growing out of these provisions, and held that the purpose of the clause was evidently to guard against such a possible construction of the policy.

In *New York Life Ins. Co.* v. *Kaufman* (78 F. [2d] 398, 402) the Ninth Circuit Court of Appeals had before it for a construction a clause which read as follows: " This policy shall be incontestable after two years from its date of issue except for nonpayment of premium and except as to provisions and conditions relating to Disability Benefits."

The difference between the clauses in the *Kaufman* and the instant case is slight. Here, only " provisions " are mentioned. There the clause excepts " provisions and conditions." In the instant case the qualifying exception follows the words " this policy." The excepting clause is differently positioned in the *Kaufman* case, but the difference in sentence structure is immaterial. The court there (at p. 403) points out that under the title " Total and Permanent Disability " there was included an entire page of provisions; it stresses that the *entire contract* was not brought within the excepting clause but only the provisions of the policy. It held that if the truthfulness of the statements in the application were to be kept open for contest the entire contract and not merely the policy should have been referred to.

Similar conclusions were reached in *Ness* v. *Mutual Life Ins. Co.* (70 F. [2d] 52); in *Mutual Life Ins. Co. of N. Y.* v. *Margolis* (11 Cal. App. [2d] 382; 53 P. [2d] 1017), and in *Mutual Life Ins. Co.* v. *Markowitz* (78 F. [2d] 396).

There now present themselves for consideration two cases where the clause, identical with that in the instant policy, was construed. These are *Kiriakides* v. *Equitable Life Assur. Soc.* (174 S. C. 140; 177 S. E. 40) and *Equitable Life Assur. Soc.* v. *Deem* (91 F. [2d] 569), a copy of which decision has been submitted by defendant's counsel. In the *Kiriakides* case the *Ness* case was followed, and the language employed in the insurance policy was held to place in repose, free from contest, misrepresentations in the application.

In the *Deem* case (*supra*) a contrary result was reached. The claim was held open to contest. The *Ness* case (*supra*) was distinguished.

The *Deem* case is not persuasive inasmuch as it is stated in the opinion that there was " No pertinent statute or decision in West Virginia, in which State the insured resided and the case was tried. It does not clearly appear from the record in what State the contract was made. The policy was executed and the proceeds made payable in New York, but it is perhaps inferable that it was delivered and became effective in West Virginia as the application for the policy was dated at Parkersburg."

It is doubtful that the court would have used such latitude in construction if it had before it a statute making incontestability of a policy compulsory — a statute which granted only a privilege of exemption from its provisions by appropriate language in the policy itself.

The *Deem* case, speaking of the clause there employed, says: " It is, in abbreviated form, in the very words used in the statute."

(Meaning the New York statute.) It then, by interpretation, reads into the language " the part of the policy which *grants* the disability benefits as an obligation of the company."

The language of the statute is sufficiently compact. Abbreviation at the expense of precision should not be encouraged. For purposes of clarity additions to the statutory language may be warranted. Certainly there can be no justification for language which by elision casts an additional burden upon the policyholders and the court as well to interpret the meaning intended.

Apart from this, the reasoning in the *Kiriakides* case is more in line with the rules of construction applied by the Supreme Court in the *Stroehmann* and *Hurni Packing Co.* cases.

The very differences of opinion on identical clauses which disclose themselves in the two cases last referred to is an impelling reason for excluding the defense.

The language of the Supreme Court in the *Stroehmann* case (*supra*, at p. 439) is apt: " The arguments of counsel have emphasized the uncertainty. The District Court and the Circuit Court of Appeals reached different conclusions, and elsewhere there is diversity of opinion * * *. Without difficulty respondent could have expressed in plain words the exception for which it now contends. It has failed, we think, so to do, and applying the settled rule the insured is entitled to the benefit of the resulting doubt."

When appellate courts, whose views are entitled to consideration, reach opposite conclusions on identical language there arises such doubt as should be resolved in favor of the insured.

This is particularly so when no great degree of skill was required to make the meaning unmistakable. If it was the intention that a claim for benefits growing out of disability should remain contestable, notwithstanding the expiration of the one-year time limit, either for any breach of the provisions of the policy or for any misrepresentations in the application, it could be so stated in that very language or in substantially the same language.

While this may be a case of first impression in so far as it concerns the construction of the clause discussed or similar clauses, the determination is impelled by principles set down by the Court of Appeals. The need for clear expression in plain English as admonished in *Mansbacher* v. *Prudential Life Ins. Co.* (*supra*), and the need for the " peace of mind that is born of definiteness and certainty," as referred to in *Killian* v. *Metropolitan Life Ins. Co.* (*supra*), dictate that all doubts should be resolved in favor of the insured.

Plaintiff is entitled to judgment in the sum of $785.83 (¶ 6 of stipulation), with interest and costs.

On reargument, February 7, 1938.

GENUNG, J.   Motion is made to vacate said judgment and for a new trial on the ground that the said decision and judgment entered thereon are contrary to law, and upon the further ground that the decision in this action as a submission of a controversy upon an agreed statement of facts under section 124 of the Municipal Court Code was improper and unauthorized as no affidavit " by one or more of the parties showing that the controversy is real and that the submission was made in good faith for the purpose of determining the rights of the parties," was filed.   Such an affidavit has been filed by the parties and that objection has been cured. Attention has been called to *Deem* v. *Equitable Life Assur. Soc.* (302 U. S. 744), where a certiorari was denied, opinion in Circuit Court of Appeals (91 F. [2d] 569), and to *Smith* v. *Equitable Life Assur. Soc.* (169 Tenn. 478; 89 S. W. [2d] 165), and *Greber* v. *Equitable Life Assur. Soc.* (43 Ariz. 1; 28 P. [2d] 817), where identical incontestability clauses were presented.

The examination of the record in the *Deem* case discloses that it arose on a demurrer to a defense.   From the statement of the defense it appears that when the policy was delivered Deem was afflicted with the very ailment upon which he based his claim in suit; that at the time when he made his application for a policy to the Equitable he was then receiving disability payments from another insurance company; four days before he filed the application he made a further claim for disability payments to an insurance company; five days after he signed the application and while it was pending he received such a disability payment.   The defense alleges he fraudulently withheld and denied all of this in his written application.

The petition for the writ states the only question to be presented is " whether the disability feature of the policy in suit is contestable for fraud on the part of the assured in obtaining the policy." Respondent's brief in opposing the writ agrees that this was the sole question involved.   The decision of the Circuit Court was considered and discussed in the opinion already filed.   It was there pointed out that no State statute or attempted compliance therewith was involved.   Hence, denial of the writ does not destroy the distinction stressed in the original opinion.

Next to be considered is *Greber* v. *Equitable Life Assur. Soc.* At page 12 of the opinion, section 1847 of the Arizona Revised Code is set forth at length.   At page 13 it is pointed out that

the Code creates incontestability only as to life insurance and has no application to disability insurance. The insured there urged that because the disability benefits were contained in a life insurance policy, such benefits came within the incontestability provision of section 1847. This contention was overruled. Apparently, the construction of the clause was not raised.

In *Smith* v. *Equitable Life Assur. Soc.* (169 Tenn. 478; 89 S. W. [2d] 165) it was also indicated that there was no statutory incontestability provision applicable to disability insurance. Section 6179 of the Tennessee Code is quoted, and it is held that this dealt with life insurance alone. The opinion then continues (at pp. 481, 482) as follows: " It follows, therefore, that unless the right to contest the validity of the contracts of insurance evidenced by these policies, that is, the generally recognized right by bill in equity to rescind and annul the contract of insurance for misrepresentation and fraud in procurement, has been expressly limited by pertinent provisions in the policies, the chancellor was in error in sustaining the demurrer in this cause."

The Tennessee case recognizes that a distinction exists where there is a statutory bar to contestability. It distinguishes *Thompson* v. *New York Life Ins. Co.* ([D. C. Okl.] 9 F. Supp. 248, 250) among other grounds because of the Oklahoma statute. Speaking of the *Thompson* case, the Tennessee opinion (at p. 485) says: " And in addition to this phase of that case obviously influencing the mind of the court in deciding the conceded doubt in favor of the insured, the court calls attention to the State statute which includes double indemnity in life insurance and therefore precludes application of an exception to the noncontestability clause thereto; and double indemnity being coupled with disability in the excepting clause under consideration, the court found a probable want of intention to accept either."

The New York statute does contain a time bar to contestability. (Insurance Law, § 101, ¶ 2.) By amendment in 1923 (Laws of 1923, chap. 28) an option or privilege is given to the insurer to save from the bar total and permanent disability benefits.

In none of the cases cited by the defendant was a similar statutory provision involved. The distinction is one of substance. In one type of cases the insured seeks to bar a defense of fraud, recognizable in law and in equity, by invoking a provision of the policy which, so he contends, creates the bar. In cases such as the instant case the statute has created the bar and the insurer must demonstrate that by appropriate language it has exercised the option or privilege which destroys the bar.

The cases now cited do not warrant any change in the conclusion previously reached. Motion to reargue denied.